Filed 4/26/21  Lopez v. Charter Communications CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LORENZO LOPEZ,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>Defendant and Appellant. | F080633 & F081435<br><br>(Super. Ct. No. BCV-19-102631)<br><br>**OPINION** |

### THE COURT\*

APPEAL from a judgment of the Superior Court of Kern County.  Stephen D. Schuett, Judge.

Morgan Lewis & Bockius, Kathryn T. McGuigan, Thomas M. Peterson and Joel M. Purles Defendant and Appellant.

Alan J. Reinach and Jonathon S. Cherne for Plaintiff and Respondent.

-ooOoo-

Appellant Charter Communications, Inc. (Charter) contends the trial court erroneously denied its motion to compel arbitration of this employment discrimination dispute.  The court sustained objections to Charter's evidence addressing the formation of

---

\*       Before Poochigian, Acting P.J., Franson, J. and Snauffer, J.

the arbitration agreement and then determined Charter failed to prove the parties agreed to arbitration. Charter contends the court's failure to consider its evidence violated the interpretation of Code of Civil Procedure section 1281.2 and California Rules of Court, rule 3.1330[1] adopted in *Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1060 (*Espejo*). We agree.

In *Espejo*, the appellate court concluded a party seeking to compel arbitration may meet its *initial* burden of showing an agreement to arbitrate simply by attaching a copy of the purported agreement to its motion. Here, Charter satisfied that initial burden by attaching a copy of the purported agreement to a declaration submitted with its motion to compel arbitration. Only after plaintiff Lorenzo Lopez challenged the validity of the agreement was Charter required to prove by a preponderance of the evidence that a contract to arbitrate had been formed. Because Charter was not required to authenticate the arbitration agreement until it was challenged, the deadline set by section 1005, subdivision (b) does not apply to the supplemental declaration filed by Charter to establish Lopez accepted the arbitration agreement while completing an online job application. (See *Espejo*, *supra*, 246 Cal.App.4th at p. 1060 [error in striking supplemental declaration as untimely under § 1005].) Therefore, as in *Espejo*, the trial court prejudicially abused its discretion when it failed to read or consider the supplemental declaration because it was not included in the moving papers.

We therefore reverse the order denying the motion to compel arbitration and remand for further proceedings.

## FACTS AND PROCEEDINGS

Lopez resides in Kern County and, as a member of the Seventh Day Adventist Church, observes the Sabbath (Friday sundown to Saturday sundown) as a day of rest and

---

**1** All unlabeled statutory references are to the Code of Civil Procedure. All references to a numbered "Rule" are to the California Rules of Court.

worship. In December 2017, Lopez went to Charter's website and searched for jobs near his residence. Lopez found a technician job and filled out an online application for the position. Lopez interviewed for the position but was not hired. Lopez alleges that during the interview he was asked if there were days he could not work, and he stated he could not work from sundown Friday through sundown Saturday due to his religion. Lopez further alleges that about a week after the interview, he was called by a recruiter and told (1) the interview went well except for him being unable to work on Saturdays and (2) he should search for another position that did not require Saturday work.

Lopez filed an administrative complaint with the Department of Fair Employment and Housing. In May 2019, he received a right-to-sue letter from the department, thus exhausting his administrative remedies.

In September 2019, Lopez filed a complaint seeking damages and injunctive relief. He alleged two types of religious discrimination in violation of California's Fair Employment and Housing Act (Gov. Code, § 12940 et seq.)—disparate treatment under Government Code section 12940, subdivision (a) and a failure to accommodate under Government Code section 12940, subdivision (*l*). In October 2019, Charter responded to the complaint by filing a motion to compel arbitration and dismiss or stay the judicial proceedings.

Charter supported its motion with a declaration from John Fries, Vice President, HR Technology. Part of Fries's responsibilities include managing Charter's job application system, which is called BrassRing. Fries's declaration stated:

> "6. External applicants ('Applicants') apply for positions within Charter, and submit documents and information in support of their application through BrassRing. The application website can be found at jobs.spectrum.com, and Applicants are linked to BrassRing through the following URL: ….

> "7. During the application process in BrassRing, Applicants are presented with Charter's Solution Channel webpage. A true and accurate copy of the Solution Channel webpage content is attached as **Exhibit A**."

3.

Fries's declaration asserted the Solution Channel webpage (1) provides information about Charter's requirement that applicants agree to arbitration, (2) states that submitting an application is agreeing to be bound by the agreement to arbitrate, and (3) includes references and links to Charter's Mutual Arbitration Agreement and Solutions Channel's Program Guidelines. Fries's declaration also stated "Applicants are required to agree to be bound by the Program in order to proceed with their application. Applicants agree to the Program by selecting the 'I agree' radio button on the Solution Channel webpage and selecting the button 'Save and continue.' " Applicants who select the "I do not agree" radio button are informed (1) their application has not been submitted because they did not agree to the arbitration program and (2) they may submit a new application and agree to participate in the arbitration program. In paragraph 16 of his declaration, Fries stated:

> "I have access to and reviewed the list of Applicants who have submitted applications through BrassRing who have agreed to participate in the Program, and I have confirmed that Plaintiff Lorenzo Lopez agreed to participate in the Program on December 18, 2017. A true and accurate copy of Lorenzo Lopez's application, which demonstrates that he agreed to participate in the Program, is attached as **Exhibit D**."

Lopez filed papers opposing Charter's motion to compel arbitration, claiming he did not consent to arbitration. His declaration asserted that (1) during the application process, he entered his name, address, phone number, e-mail, educational background, work experience, and answers to some other questions; (2) he does not recall (a) Charter's application including an arbitration agreement or (b) selecting "I agree" to arbitration; (3) there was no link to an arbitration agreement or instructions on where to obtain an arbitration agreement; (4) when submitting the application to Charter, he never signed the application and never entered an electronic signature on the application or on any other document; and (5) he first became aware that Charter has an arbitration agreement after he filed this lawsuit.

Lopez also filed evidentiary objections to Fries's declaration and attached exhibits. Lopez objected to Exhibit D, the purported agreement to participate in the arbitration program, by asserting a lack of foundation and Fries's lack of personal knowledge. Citing Evidence Code sections 1400 and 1401, Lopez argued the document had not been properly authenticated. Lopez also objected to paragraph 16 of Fries's declaration based on a lack of foundation, a lack of personal knowledge, hearsay, and the secondary evidence rule. Lopez objected to Exhibit A based on its irrelevance and a lack of foundation.

Charter timely filed a reply to Lopez's opposition along with supplemental declarations from Fries and its counsel. Fries's supplemental declaration provided additional information about (1) his responsibilities and experience in managing BrassRing, Charter's online job application system; (2) how the system operates; and (3) Lopez's use of the system to submit a job application. Charter did not request an evidentiary hearing with live testimony and did not request a continuance of the hearing to conduct discovery.

Lopez filed written objections to the supplemental declarations. Lopez argued Fries's supplemental declaration was new evidence that had not been presented with Charter's moving papers and, as a result, Charter had failed to comply with section 1005, subdivision (b). That provision states in part: "Unless otherwise ordered or specifically provided by law, all moving and supporting papers shall be served and filed at least 16 court days before the hearing." (§ 1005, subd. (b).) Lopez also argued the exhibit attached to Fries's supplemental declaration should have been submitted with the moving papers in accordance with section 1005.

On December 3, 2019, the trial court held a hearing on the motion to compel arbitration. After the appearances were entered, the court announced its tentative ruling by stating:

5.

"The Court is going to deny the motion.  [¶]  The Court first would rule on the objections to the John Fries' declaration and would sustain the evidentiary objections that have been submitted by the plaintiff.  The Court did not read or consider the supplemental declaration that was submitted by Mr. Fries, as it was not included with the original moving papers.  And based on the lack of authentication of the arbitration agreement or establishing that Mr. Lopez entered into an arbitration agreement, the Court's tentative again is to deny."

After hearing argument from counsel, the court adopted its tentative ruling and denied Charter's motion to compel arbitration.  Charter's counsel stated he would provide notice.

Ten days later, Charter filed a post-hearing submission that included two proposed statements of decision—one that resolved the motion by granting it (which Charter's counsel believed was the correct resolution) and one that resolved the motion in accordance with the trial court's oral ruling and subsequent minute order.  On December 24, 2019, the court filed an unsigned minute order stating the court denied Charter's request for a statement of decision based on the general rule that a trial court need not issue a statement of decision after ruling on a motion.  In January 2020, Charter filed a notice of appeal.

In February 2020, the trial court signed and filed an order (1) denying Charter's motion to compel and (2) sustaining Lopez's evidentiary objections to paragraph 16 of Fries's first declaration and exhibits A and D attached to that declaration.  In July 2020, Charter filed a notice of appeal from the February 2020 order.  Four days later, this court entered an order granting its own motion to consolidate the two appeals.

After Lopez's respondent's brief was filed and neither party had addressed the finding-compelled-as-a-matter-of-law standard of appellate review applied in *Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 981, to a motion to compel arbitration, this court sent a letter directing Charter's appellant's reply brief to address specified issues relating to the standard of review and the trial court's obligation to issue a statement of decision.  (See Gov. Code, § 68081.)  The letter also stated we would

determine whether to afford respondent an opportunity to file a sur-reply brief after the appellant's reply brief was filed. Subsequently, we allowed Lopez to file a sur-reply brief, which he did on February 3, 2021. Accordingly, the case is fully briefed and has been given calendar preference pursuant to Lopez's motion and section 1291.2. (See Rule 8.240.)

## DISCUSSION

Charter contends the trial court erred in denying its motion to compel arbitration by (1) failing to consider Charter's evidence demonstrating the parties agreed to arbitration and (2) refusing to provide the requested statement of decision as required by section 1291. Based on *Espejo, supra,* 246 Cal.App.4th 1047 and *Condee v. Longwood Managment Corp.* (2001) 88 Cal.App.4th 215 (*Condee*), we agree with the first claim of error. Thus, we reverse and remand with directions for the trial court to conduct further proceedings addressing the evidentiary issues and the formation of an enforceable agreement to arbitrate.

I.    PROCEDURES FOR SHOWING AN ARBITRATION AGREEMENT EXISTS

       A.    Legal Principles

When a party to an arbitration agreement refuses to submit to arbitration, the other party may petition the court to compel arbitration and stay any pending lawsuit. (*Condee*, *supra*, 88 Cal.App.4th at p. 218; §§ 1281.2, 1281.4.) The proceeding to compel arbitration is in essence a suit in equity to compel specific performance of the arbitration agreement. (*Ibid*.) Section 1281.2 provides:

> "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that [an exception applies]."

7.

This statutory text was addressed by our Supreme Court in *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394 (*Rosenthal*), when it concluded a party opposing arbitration did not have the right to a jury trial of the existence or validity of the arbitration agreement. (*Id*. at p. 413.) The court stated:

> "Instead, when a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable. Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence." (*Ibid*.)

The court did not define what it meant by the phrase "accompanied by *prima facie evidence* of a written agreement" and the facts of that case did not require it to address the sufficiency of the initial petition to compel arbitration. (*Rosenthal*, *supra*, 14 Cal.4th at p. 413, italics added.) After determining a jury trial was not required, the Supreme Court addressed the type of hearing the trial court was to conduct before making its findings of fact relevant to the enforcement of the arbitration agreement. (*Ibid*.) The court rejected the argument that an evidentiary hearing with the presentation of live testimony was always required, but noted when the parties presented sharply conflicting factual accounts, the better course normally would be to hear oral testimony and allow cross-examination. (*Id*. at p. 414.)

The question of the sufficiency of the initial petition to compel arbitration was addressed in more detail in *Condee*, *supra*, 88 Cal.App.4th 215. The court stated section 1281.2 required the party seeking arbitration to allege the existence of an agreement to arbitrate and quoted a rule of court requiring a copy of the arbitration provisions to be attached to the petition or, alternatively, the provisions to be set forth verbatim in the petition. (*Condee, supra,* at p. 218.) Currently, Rule 3.1330 addresses the contents of the requesting party's initial papers:

"A petition to compel arbitration or to stay proceedings pursuant to Code of Civil Procedure sections 1281.2 and 1281.4 must state, in addition to other required allegations, the provisions of the written agreement and the paragraph that provides for arbitration. The provisions must be stated verbatim or a copy must be physically or electronically attached to the petition and incorporated by reference."

The court in *Condee* determined the parties seeking arbitration had properly alleged the existence of an arbitration agreement and supported the allegation as provided in the predecessor of Rule 3.1330. (*Condee*, *supra*, 88 Cal.App.4th at p. 219.) It also concluded the parties seeking arbitration were not required to follow the normal procedures of document authentication and noted that section 1281.2 "does not require the petitioner to introduce the agreement into evidence." (*Condee*, *supra*, at pp. 218, 219.) Furthermore, the court determined the trial court erred in denying the petitions to compel arbitration for failure to authenticate the arbitration agreement when the authenticity of the signature on the document was never challenged. (*Ibid.*)

Subsequent cases have considered *Condee* and analyzed in more detail the initial burden section 1281.2 places on the party seeking arbitration. For example, in *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836 (*Ruiz*), the court stated: "Properly understood, *Condee* holds that a petitioner is not required to authenticate an opposing party's signature on an arbitration agreement *as a preliminary matter* in moving for arbitration *or* in the event the authenticity of the signature is not challenged." (*Id.* at p. 846.)[2] However, once the authenticity was challenged, the party seeking arbitration "had the burden of proving by a preponderance of the evidence that the electronic signature was authentic (Evid. Code, § 1401)." (*Ibid.*)

---

[2] This statement about signatures must be understood in context of the principles defining the formation and enforceability of an arbitration agreement, particularly the principle that the written arbitration agreement does not necessarily need to be signed because "a party's acceptance may be implied in fact [citation] or be effectuated by delegated consent [citation]." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*).)

In *Espejo*, *supra*, 246 Cal.App.4th 1047, the court relied on *Condee* and concluded "that defendants here met their initial burden [to show an agreement to arbitrate] by attaching to their petition a copy of the purported arbitration agreement bearing Espejo's electronic signature." (*Id*. at p. 1060.) Because Dr. Espejo "challenged the validity of that signature in his opposition, defendants were then required to establish by a preponderance of the evidence that the signature was authentic." (*Ibid*.) In *Espejo*, the defendants filed a supplemental declaration to authenticate Dr. Espejo's signature on the arbitration agreement before the plaintiff filed his opposition. (*Ibid*.) The trial court struck the supplemental declaration, finding it was untimely under section 1005.

The appellate court concluded the trial court had abused its discretion in striking the supplemental declaration because that declaration did not need to be filed within the timeframe established by section 1005, subdivision (b). The appellate court then examined the contents of the supplemental declaration and determined the factual details established the electronic signature was the act of Dr. Espejo. (*Espejo*, *supra*, at p. 1060.) The court did not reach Dr. Espejo's claims that the arbitration agreement was unenforceable due to (1) the lack of mutual assent or (2) unconscionability. Instead, it remanded the matter so the trial court could address those issues. (*Id*. at p. 1062–1063.)

B.     Application of Legal Principles

First, based on the interpretation of section 1281.2 and Rule 3.1330 adopted in *Espejo*, we conclude Charter met its *initial* burden of (1) alleging an agreement to arbitrate existed and (2) supporting that allegation by attaching a copy of the purported agreement to Fries's declaration. (See § 1281.2.) The agreement did not need to be authenticated at that point in the proceedings. In reaching this conclusion, we reject Lopez's interpretation of the trial court's decision, which asserts the court found that Charter failed to meet its initial burden—that is, the petition was not "accompanied by prima facie evidence of a written agreement to arbitrate the controversy" as stated in

10.

*Rosenthal*, *supra*, 14 Cal.4th at page 413.**3** Instead, we interpret the court's statement that Charter did not establish "Lopez entered into an arbitration agreement" to mean the court determined Charter had not proven by a preponderance of the admissible evidence that Lopez gave his consent to the agreement, which consent is an essential element to the formation of an enforceable contract under California law. (Civ. Code, §§ 1550, 1565.)

Second, we address the meaning of the trial court's statements that (1) it would sustain the evidentiary objections submitted by Lopez and (2) it did not read or consider Fries's supplemental declaration because it was not included with the original moving papers. Lopez's objection to the supplemental declaration on the ground Charter had failed to comply with section 1005, subdivision (b) was, in our view, sustained by the trial court. This evidentiary ruling was an abuse of discretion because the supplemental declaration should have been admitted into evidence and weighed by the trial court. In practical effect, the court committed the same evidentiary error as the trial court in *Espejo* when it struck the supplemental declaration as untimely under section 1005. (See *Espejo*, *supra*, 246 Cal.App.4th at p. 1060.) Lopez's technical argument that *Espejo* is distinguishable from this case because that court struck the supplemental declaration and Fries's supplemental declaration was not struck is not convincing because the substance of the evidentiary rulings is more important than technical or formal characterizations. (See Civ. Code, § 3528 ["The law respects form less than substance"].)

Third, we conclude there is a reasonable probability that the trial court's erroneous decision not to read or consider Fries's supplemental declaration affected its decision to sustain Lopez's evidentiary objections to paragraph 16, exhibit A, and exhibit D of Fries's first declaration and to strike those items. In other words, if the court had

---

**3** In our view, the party seeking arbitration meets its initial burden—that is, presents prima facie evidence of a written agreement to arbitrate—by complying with the requirements of Rule 3.1330.

11.

weighed the evidence contained in the supplemental declaration, it might have overruled some or all of the objections.

Fourth, we conclude the court's order sustaining Lopez's objections and striking paragraph 16 of Fries's first declaration and the two exhibits was prejudicial because there is a reasonable probability that a result more favorable to the appealing party would have been reached if those evidentiary rulings had not been tainted by the error involving the application of section 1005 to Fries's supplemental declaration. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574.)

## II.    APPELLATE RELIEF

Charter's opening brief argued "[t]he order denying arbitration should be reversed with directions that the parties proceed to arbitration."  During oral argument, Charter's counsel stated that remand for further proceedings would be an acceptable way to deal with the evidentiary errors and their consequences.

Exercising the discretionary authority granted to California appellate courts by sections 43 and 906, we conclude the appropriate relief is the reversal of the order and a remand for further proceedings.  Further proceedings are appropriate to resolve the evidentiary issues and address the disputes about the credibility of the persons who provided declarations and other factual issues.  Stated another way, we will not resolve the evidentiary issues and then assume the role of a trier of fact by making credibility determinations and resolving other factual issues.  Our role as a court of review ends once we have determined that the current record does not allow us to decide, as a matter of law, that Charter proved (or failed to prove) an agreement to arbitrate was formed by the parties.  Consequently, the trial court, in its role as the trier of fact, must resolve the ultimate factual questions of whether an enforceable contract was formed and whether that contract included arbitration provisions encompassing this dispute.

12.

When conducting the further proceedings on remand, the trial court shall apply state law principles governing the formation and enforceability of contracts. (*Pinnacle*, *supra*, 55 Cal.4th at p. 236; *Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 59; *Bolter v. Superior Court* (2001) 87 Cal.App.4th 900, 906.) To prove an arbitration agreement was formed under California law, Charter must establish the essential elements of a contract—specifically, (1) parties capable of contracting, (2) the consent of those parties, (3) a lawful object, and (4) adequate consideration. (Civ. Code, § 1550.) The consent of the parties must be (1) free, (2) mutual, and (3) communicated by each to the other. (Civ. Code, § 1565.) Charter, as the party seeking to compel arbitration, bears the burden of proving by a preponderance of the evidence that a valid arbitration agreement was formed. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972; *Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1068 [defendant failed to prove plaintiff electronically signed the contract containing the arbitration provision]; *Ruiz*, *supra*, 232 Cal.App.4th at p. 846 [defendant did not meet evidentiary burden relating to electronic signature].)

In addition, the trial court shall consider the evidence contained in the supplemental declarations submitted by Charter and decide Lopez's remaining evidentiary objections based on the entirety of the papers filed by the parties. In other words, the evidentiary objections (other than those based on § 1005) are "at large" on remand and the trial court's earlier evidentiary rulings addressing Fries's first declaration and the supplemental declarations have no effect.

III.     STATEMENT OF DECISION

Section 1291 provides: "A statement of decision shall be made by the court, if requested pursuant to Section 632, whenever an order or judgment, except a special order after final judgment, is made that is appealable under this title." This provision, along with section 632 and Rule 3.1590, define the circumstances in which a trial court must

13.

issue a statement of decision when it denies a motion to compel arbitration. Thus, we note the trial court's stated reason for not providing a written statement of decision was contrary to these statutes and Rule 3.1590. In any event, because the order denying the motion is reversed on other grounds, we do not address (1) whether Charter made a request that complies with the applicable timing and content requirements and, thus, triggered the court's obligation to issue a statement of decision or (2) whether the oral statements made by the court during the hearing fulfilled that obligation (see Rule 3.1590(n)).

To remove uncertainty for the parties and the trial court in the conduct of the further proceedings on remand, nothing in this opinion prohibits either party from requesting a statement of decision after the issuance of remittitur.

## DISPOSITION

The order denying the motion to compel arbitration and sustaining three evidentiary objections is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion. Appellant shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a).)