Filed 4/30/21  Modified and Certified for Pub. 5/21/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MAUREEN BANNISTER,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MARINIDENCE OPCO, LLC, et al.,<br><br>        Defendants and Appellants. | A159815<br><br><br>(Marin County Super. Ct. No. CIV1804315) |

Marinidence Opco, LLC, Providence Group, Inc., and Tommy Siqueiro, III (collectively "Marinidence") challenge the trial court's denial of their motion to compel arbitration.  Because we conclude their appeal lacks merit, we affirm.

**BACKGROUND**

**A.**

On a petition to compel arbitration, the trial court must first determine whether an "agreement to arbitrate the controversy exists."  (Code Civ. Proc., § 1281.2.)  "Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence."  (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413.)  The party seeking arbitration can meet its initial burden by attaching to the petition a copy of the arbitration agreement purporting to bear the respondent's signature.

1

(*Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1060 (*Espejo*).) Where, as here, the respondent challenges the validity of the signature, however, the petitioner must "establish by a preponderance of the evidence that the signature was authentic." (*Id.*) In such proceedings, "the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)

### B.

Maureen Bannister had worked in the administrative offices at Marin Post Acute, a skilled nursing facility, for approximately three decades when Marinidence purchased the facility. A year later, Marinidence terminated Bannister, and she filed the instant lawsuit alleging discrimination, retaliation, defamation, and other claims.

In response, Marinidence filed a motion to compel arbitration, alleging that, at the time it took over the facility, Bannister electronically signed an arbitration agreement when completing the paperwork for new Marinidence employees. After Bannister presented evidence that she never saw the agreement during the onboarding process and did not affix her electronic signature to it, the trial court denied the motion.

### DISCUSSION

Marinidence asserts that the trial court incorrectly held that it failed to meet its burden of establishing the existence of a valid arbitration agreement. We disagree.

### A.

We reject Marinidence's argument that we should independently review the trial court's conclusion that it failed to establish the existence of

2

an arbitration agreement. Where, as here, an appeal from a denial of a motion to arbitrate turns on disputed facts, we review the trial court's ruling for substantial evidence. (*Luxor Cabs, Inc. v. Applied Underwriters Captive Risk Assurance Co.* (2018) 30 Cal.App.5th 970, 977 .) Under this standard, " ' "we must presume the court found every fact and drew every permissible inference necessary to support its judgment, and defer to its determination of credibility of the witnesses and the weight of the evidence." ' " (*Martinez v. BaronHR, Inc.* (2020) 51 Cal.App.5th 962, 966-967 (*Martinez*).)[1]

## B.

Substantial evidence supports the trial court's conclusion that Marinidence failed to prove that Bannister signed (electronically) the arbitration agreement.

## 1.

Civil Code section 1633.9, subdivision (a), governs the authentication of electronic signatures. It provides that an electronic signature may be attributed to a person if "it was the act of the person." (Civ. Code, § 1633.9,

---

[1] As Bannister notes, some courts have held that "[w]hen . . . the court's order denying a motion to compel arbitration is based on the court's finding that petitioner failed to carry its burden of proof, the question for the reviewing court is whether that finding is erroneous as a matter of law." (*Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1066.) Under such a standard, " ' "the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' " (*Id*. at p. 1067.) Further, under this standard (as with the substantial evidence standard), the appellate court may not reweigh the evidence or make its own determination of credibility; instead, " 'it must view all factual matters most favorably to the prevailing party and in support of the judgment.' " (*Id.*, at p. 1067.) Because we agree with Bannister that the outcome is the same whether we apply this standard or the substantial evidence standard, we need not address the appropriateness of this standard here.

subd. (a).)  Further, "[t]he act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." (*Id*.)  For example, a party may establish that the electronic signature was "the act of the person" by presenting evidence that a unique login and password known only to that person was required to affix the electronic signature, along with evidence detailing the procedures the person had to follow to electronically sign the document and the accompanying security precautions.  (See *Espejo*, *supra*, 246 Cal.App.4th at p. 1062; *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 844.)

**2.**

This is a classic example of a trial court drawing a conclusion from conflicting evidence.  It is not our role to second guess the trial court's factual determinations.

Marinidence presented evidence that Bannister signed the arbitration agreement during her employee onboarding process.  To access the online onboarding portal, an individual must enter an employee's first and last name and Social Security number, in addition to entering Marinidence's "Client ID" and pin code (the same "Client ID" and pin code for all employees).  Once logged in, the individual must complete a W-4 tax withholding form and provide emergency contact information prior to accessing the arbitration agreement.  Based on these requirements, according to Marinidence, the electronic signature on the arbitration agreement could only have been placed there by Bannister.

Marinidence also presented a declaration from Barbara Matson, its human resources manager, who visited Marin Post Acute to assist with employee onboarding, as well as from Brian Ullrich, a consultant present

4

that day. The two declarants asserted that Bannister was the only employee who completed the onboarding process that day because, as an administrative employee, she was required to learn the onboarding process. Matson and Ullrich both stated that they "sat next to Ms. Bannister for approximately 30 to 45 minutes while she used the computer to complete the entire" onboarding process. According to Matson, "Bannister reviewed and electronically signed the arbitration agreement on the computer during this process." Ullrich claimed that because Bannister was the only person using the computer at the time, she was the only person who could have electronically signed the arbitration agreement.

However, Bannister presented evidence that she did not touch the computer during that process and never reviewed or signed any arbitration agreement.

According to Bannister's declaration, when Marinidence purchased the nursing facility, it had set a short deadline by which to complete the purchase transaction and take over the facility. As a result, Marinidence had to rush to hire the 180 nursing facility staff members employed by the prior owners before the deadline.

When Matson visited the facility, Bannister witnessed Matson onboarding 20 or more employees that day, including herself, by entering their information into a laptop. No employee-specific user names or passwords were required to access the onboarding portal, and each employee's Social Security number was available in the employee's personnel file. Matson asked Bannister for information, including her tax withholdings and emergency contacts, but "did not show me what was on the computer and did not provide me with any copies of documents." Matson did not inform Bannister or the other employees about an arbitration agreement. According

to Bannister, she never saw the arbitration agreement and never clicked "I agree" or otherwise signed the arbitration agreement during the onboarding process. The process took 10 minutes or less, Bannister never operated Matson's laptop computer, and Ullrich did not sit next to Bannister. Bannister also asserted that, with 180 employees, there simply was not enough time for Matson to sit with each employee for 30 to 45 minutes to complete the onboarding process.

In addition, Bannister presented evidence that Matson completed the onboarding process for other employees without their participation. According to Bannister, Matson continued to onboard employees after she returned to her office in Utah. She did so remotely, without the employees being present. Bannister also presented emails confirming that Matson asked her for documentation for multiple employees to assist Matson in completing the onboarding process remotely. Matson admitted that she "assisted" some employees in completing the onboarding process "if an employee had difficulty using a computer" but asserted that she never did so without their knowledge and agreement and denied doing so for Bannister.

Substantial evidence supports the trial court's conclusion that Marinidence failed to authenticate the electronic signature on the arbitration agreement as Bannister's. Marinidence's evidence did not establish that Bannister was assigned a unique, private user name and password such that she is the only person who could have accessed the onboarding portal and signed the agreement; instead, the evidence showed that the requisite "Client ID" and pin code was not employee-specific, and Matson had access to the information necessary to access the onboarding portal via employee personnel records.

6

The trial court also reasonably held that Matson and Ullrich's declarations did not establish that the electronic signature on the arbitration agreement was placed there by Bannister. The court determined that Matson's account was not credible. Marinidence failed to rebut Bannister's evidence that Matson completed the onboarding process for other employees. That evidence, in the trial court's view, "undermines the credibility of Matson's claim that she did not sign any employee's arbitration agreement without first obtaining that employee's knowledge and consent." Further, the court explained that neither Matson nor Ullrich claimed to have actually observed Bannister click the "I accept" button to sign the arbitration agreement. The court concluded that "[a]t best," Marinidence's evidence was of "equal weight" to Bannister's countervailing evidence that "Matson had the ability and motive to access [Bannister's] onboarding account." As a result, the court concluded that Marinidence failed to meet its burden of proving the existence of an arbitration agreement by a preponderance of the evidence. Because we must " ' "defer to [the trial court's] determination of credibility of the witnesses and the weight of the evidence," ' " (*Martinez, supra,* 51 Cal.App.5th at pp. 966-967), we affirm the trial court's ruling.

Marinidence tries to sidestep the conflicting evidence. It argues that *only* Bannister could have signed the arbitration agreement because the onboarding portal requires the competition of W-4 and emergency contact forms before the arbitration agreement is presented. Further, in its reply brief, Marinidence argues that the trial court erroneously interpreted Civil Code section 1633.9 to require a unique username and password as the only method for authenticating an electronic signature, improperly disregarding the evidence that the W-4 and emergency contact forms had to be completed prior to the arbitration agreement. However, Marinidence does not explain

7

the basis for its assumption that the no one other than the employee could complete a W-4 or emergency contact form. Moreover, Bannister submitted a declaration explaining that Matson asked her for the information necessary to complete these forms, and the trial court was not required to credit Matson's account over Bannister's. Because Bannister's evidence showed that she was not the only person who could have executed the arbitration agreement, we disagree that the trial court committed any legal error.

We need not address the parties' remaining arguments.

## DISPOSITION

The judgment is affirmed.

_____
BURNS, J.

We Concur:

_____
SIMONS, ACTING P.J.

_____
RODRIGUEZ, J.*

A159815

---

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9

Filed: 05/21/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| MAUREEN BANISTER, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MARINIDENCE OPCO, LLC, et al., <br><br> Defendants and Appellants. | A159815 <br><br> (Marin County Super. Ct. No. CIV1804315) <br><br> **ORDER MODIFYING AND PUBLISHING OPINION [NO CHANGE IN JUDGMENT]** |

THE COURT:

The opinion in the above-entitled matter filed on April 30, 2021, was not certified for publication in the Official Reports. For good cause appearing, pursuant to California Rules of Court, rule 8.1105(c)(2), the opinion is certified for publication. It is further ordered that the opinion filed on April 30, 2021, shall be MODIFIED as follows:

1. On pages 7-8, the sentence:

> "However, Marinidence does not explain the basis for its assumption that the no one other than the employee could complete a W-4 or emergency contact form."

Shall be replaced with the following sentence:

> "However, Marinidence does not explain the basis for its assumption that no one other than the employee could complete a W-4 or emergency contact form."

Date    05/21/2021        SIMONS, J.      Acting P.J.

1

Marin County Superior Court, Case No. CIV1804315, Hon. James T. Chou

Ehlert Hicks LLP, Allison L. Ehlert and Scotia J. Hicks, for Plaintiff and Respondent.

Fisher & Phillips LLP, Grace Y. Horoupian, Christopher M. Ahearn, Aaron D. Langberg and Raymond W. Duer, for Defendants and Appellants.