Filed 12/8/21  Moncibaez v. Stericycle, Inc. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| ERIK MONCIBAEZ, | B304079 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 19STCV25328) |
| v. | |
| STERICYCLE, INC. et al., | |
| Defendants and Appellants. | |


APPEAL from an order of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge.  Affirmed.

Littler Mendelson, Monica Martelli Quinn, Sara Ashley Zimmerman, Charles Cannizzaro for Defendants and Appellants.

Reisner & King, Adam J. Reisner, Tessa M. King; Benedon & Serlin, Douglas G. Benedon and Kian Tamaddoni for Plaintiff and Respondent.

## INTRODUCTION

Erik Moncibaez sued his employer, Stericycle, Inc., and others alleging sexual harassment, racial discrimination, and retaliation.  Stericycle moved to compel arbitration, and presented an arbitration agreement that Moncibaez purportedly signed electronically when he began working for Stericycle.  Stericycle also submitted a declaration stating that Moncibaez and his supervisor accessed and signed the document through an online portal.  Moncibaez opposed the motion, asserting that although he "clicked through" several documents, he did not recall seeing or signing the arbitration agreement.  He also noted that the signature line stated "Paul Moncibaez," a version of Moncibaez's name he did not typically use.  The trial court denied the motion, finding that Stericycle failed to meet its burden to demonstrate an enforceable arbitration agreement. Stericycle appealed.

We affirm.  Stericycle did not authenticate Moncibaez's electronic signature as required by Civil Code, section 1633.9, subdivision (a).  Moncibaez and his supervisor both had access to the arbitration agreement, and Stericycle did not meet its burden to prove the electronic signature was "the act of" Moncibaez.  Substantial evidence therefore supports the trial court's ruling.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Complaint*

Moncibaez filed a complaint against Stericycle, district sales manager Joshua Amaya, and territory sales manager Matthew Toner on July 19, 2019.  Moncibaez asserted seven causes of action for sexual harassment, racial discrimination, retaliation, and intentional infliction of emotional distress.  Moncibaez alleged that he began working as a sales executive for

2

Stericycle on July 10, 2017, and that he was still employed there. He alleged that Toner harassed him "by making graphic sexual, lewd, and crude comments to [Moncibaez] as a means of singling him out, for personal gratification and to demean and upset him." Moncibaez complained to Amaya about Toner, but Amaya "pursued no remedial action," harassed Moncibaez, and told Toner that Moncibaez had complained about him. Moncibaez further alleged that he spoke with Stericycle's human resources department, but his concerns were "summarily disregarded." In addition, Moncibaez alleged that although he was "generating more sales than all of the sales executives on his team," he was written up for low performance and reassigned to a lower-producing sales territory. He alleged that after returning to work following a short illness in February 2019, he discovered that he had been locked out of his office and denied access to the company's remote work computer system. Thereafter, Stericycle refused Moncibaez's requests to return to work. Moncibaez requested actual damages, declaratory relief, injunctive relief, punitive damages, and attorney fees.

Stericycle and Amaya answered the complaint; Toner was not served with the complaint and did not appear below. Hereafter, we refer to Stericycle and Amaya collectively as "defendants."

B. *Defendants' motion to compel arbitration*

Defendants moved to compel arbitration and stay the superior court proceedings. Defendants asserted that on July 10, 2017, Moncibaez signed an arbitration agreement. The three-page arbitration agreement attached to the motion stated that "any and all disputes, claims or controversies arising out of the employment relationship between the parties or the termination

3

of that relationship, shall be resolved by final and binding arbitration." The arbitration agreement stated that it covered any claims by an employee against Stericycle or Stericycle employees, and it was governed by the Federal Arbitration Act (FAA), 9 U.S.C. § 1. It also stated that an employee receiving the agreement had 30 days to opt out of arbitration, and if no opt-out notice was received, the arbitration agreement "will become fully effective and binding upon the date" the agreement was signed. It further stated, "I acknowledge that I have carefully reviewed this agreement and that I understand that I have thirty (30) days to opt out of arbitration if I do not wish this agreement to apply to me." The arbitration agreement had blank lines for the employee's signature, a signature for Stericycle, and dates for each. The version attached to defendants' motion to compel arbitration was blank; it had no dates or signatures.

Defendants submitted the declaration of Amanda Beezley, Stericycle's human resources compliance manager. She stated that she managed "Stericycle's relations with its third-party vendor Red Carpet, the online portal utilized by Stericycle for maintenance and signature of employment-related documents." Beezley stated that she had "administrative access to Red Carpet as it pertains to employees," and therefore could "log on and view which documents have been signed. The only details I can see are things such as document title, date and time of access, and date and time of acknowledgement." Regarding Moncibaez's documents, Beezley attached a "screenshot entitled 'Version History' show[ing] the date(s) and time(s) the Arbitration Agreement was accessed, and by whom." The screenshot had a section titled "ARBITRATION AGREEMENT," and it had what appeared to be links to the arbitration agreement in English and

4

Spanish.  Below the links, it stated, "I acknowledge that I have carefully reviewed this agreement and that I understand that I have thirty (30) days to opt out of arbitration if I do not wish this agreement to apply to me."  In the "Acknowledgement of Receipt" section, the employee signature line stated, "Paul Moncibaez (Electronically Signed)," with a date of July 11, 2017.  The section for a Stericycle representative stated, "Chris Ramirez (Electronically Signed)" on the same date.  Beezley explained that Ramirez was Moncibaez's manager.

A second portion of the screenshot page showed what Beezley described as "the date(s) and time(s) the Arbitration Agreement was accessed, and by whom."  The table included the following information:

| Version | Description | Label | Date | Publisher | Action |
|---------|-------------|-------|------|-----------|--------|
| 4 | Record of published content | Published 07/11/2017 12:46:41 | 07/11/2017 12:46:41 | Chris Ramirez | View Delete Rollback |
| 3 | Record of published content | Published 07/11/2017 12:46:41 | 07/11/2017 12:46:41 | Chris Ramirez | View Delete Rollback |
| 2 | Record of published content | Published 07/11/2017 12:25:02 | 07/11/2017 12:25:02 | Erik Moncibaez | View Delete Rollback |
| 1 | Record of published content | Published 07/10/2017 11:53:34 | 07/10/2017 11:53:33 | Chris Ramirez | View Delete Rollback |

Beezely explained that this version history shows Moncibaez "electronically acknowledged the Arbitration Agreement at approximately 12:25:02 on July 11, 2017.  The Arbitration Agreement also required signature by . . . manager Chris

5

Ramirez, which accounts for the additional entries on the Version History."

Defendants contended the arbitration agreement was valid and enforceable under the FAA and California law. They asserted that Moncibaez electronically signed the arbitration agreement, and defendants had properly authenticated his electronic signature. Defendants also argued that even if Moncibaez had not signed the arbitration agreement, "his continued employment constitutes an assent to be bound by the terms of the agreement."

Moncibaez opposed the motion, asserting that defendants failed to meet their burden to show that a valid arbitration agreement existed. Moncibaez submitted a declaration stating that he was not given the opportunity to review any documents before signing them, he did not recall signing the arbitration agreement, and he was not provided any opportunity to ask questions about the arbitration agreement. He stated that as his employment with Stericycle began, Ramirez asked Moncibaez "to complete some online forms at his desktop computer. I was asked to sit on a chair next to Supervisor Ramirez and use the computer at his desk to complete forms so that I could begin my training." He continued, "I was not given the opportunity to review any of the documents before signing and have no recollection of ever seeing, much less agreeing to, the Arbitration Policy." Moncibaez stated that he "felt rushed and forced to click through the online prompts," while Ramirez "told me, 'let's get through this,' urging me to hurry up and sign without reviewing the information." Moncibaez further stated that although the arbitration agreement was purportedly signed by "Paul Moncibaez," "I typically sign my name as 'Erik Moncibaez' and do not recall ever

typing 'Paul Moncibaez' on any Stericycle document." He stated that he "solely completed the electronic forms under fear of losing an employment opportunity. As such, I **did not** execute the alleged agreement." (Emphasis in original.)

Moncibaez argued that defendants failed to establish the existence of a valid arbitration agreement, because there was no meeting of the minds. He further argued that the arbitration agreement was substantively and procedurally unconscionable.

In their reply, defendants asserted that Moncibaez failed to refute the existence of a binding arbitration agreement. Defendants also argued that the arbitration agreement was not unconscionable. They did not submit any additional evidence.

C.    *Hearing and ruling*

At the hearing on the motion, the parties briefly argued their positions. The court stated that the arbitration agreement "does not, to the court, appear to be unconscionable. There's no sort of stance of unconscionability, at best a small amount of procedural unconscionability." The court continued, "[B]ut there's a question there if there's a contract at all. Therein lies the rub." The court therefore stated that "the defendant fails to meet their burden and this motion is denied." Defense counsel argued again that there was a valid agreement, and asserted that the electronic signature was valid. The court stated, "I thought there was a lot of hearsay from the defense's argument, and that signed document, that's questionable to the court." The court also stated, "There wasn't any testimony that the plaintiff was told about what he could or could not do also. This may just fall into that narrow trough of I still don't think you're carrying your burden. [¶] I know what the state of the law is, and in some circumstances, I would be willing to find for the defense in this

7

regard, but in this instance, I'm uncomfortable doing that." In its minute order, the court stated, "The Motion to Compel arbitration and to stay Judicial proceedings . . . is Denied. Defendant fails to meet the burden of proof."

Defendants timely appealed. (Code Civ. Proc, § 1294.)

## DISCUSSION

Defendants contend that "the only issue on appeal is the existence of an agreement to arbitrate." They assert that Moncibaez "admitted to signing the Agreement," and "as a matter of law, a valid contract existed between [Moncibaez] and Stericycle." Moncibaez contends that he did not sign the agreement, and asserts that defendants did not carry their burden to show the existence of an enforceable agreement. Where the trial court resolved contested issues of fact in deciding a motion to compel arbitration, such as whether an arbitration agreement existed, we review the court's factual findings for substantial evidence. (See *Luxor Cabs, Inc. v. Applied Underwriters Captive Risk Assurance Co.* (2018) 30 Cal.App.5th 970, 977.)[1]

---

[1] As Moncibaez points out, some courts hold that when a trial court's order denying a motion to compel arbitration is based on the court's finding that the moving party failed to carry its burden of proof, the question for the reviewing court is whether that finding is erroneous as a matter of law. (See, e.g., *Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1066 (*Fabian*); *Garcia v. KND Development 52, LLC* (2020) 58 Cal.App.5th 736, 744.) We do not address this discrepancy in the case law; the outcome here would be the same under either standard.

8

"[W]hen a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court . . . must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable. Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence." (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413; see also *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)

Parties moving to compel arbitration "may meet their *initial* burden to show an agreement to arbitrate by attaching a copy of the arbitration agreement purportedly bearing the opposing party's signature." (*Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1060 (*Espejo*).) If the opposing party challenges the validity of that signature, however, the moving party must "establish by a preponderance of the evidence that the signature was authentic." (*Ibid.*)

Here, the court found the "signed document" to be "questionable," and held that defendants failed to carry their burden. Defendants say little on the issue of authentication in their opening brief, asserting instead that Moncibaez "admitted to signing the Agreement because he clicked through the online prompts and completed the electronic forms." Moncibaez, however, notes that he stated in his declaration that he "did not execute" the arbitration agreement, he had no recollection of ever seeing the arbitration agreement, he typically signs his name "Erik Moncibaez," and he did not recall typing the name "Paul Moncibaez" on any Stericycle documents. Moncibaez asserts that

9

Beezley's "conclusory statement" in her declaration that Moncibaez signed the agreement is insufficient to meet defendants' burden to authenticate the signature. In their reply brief, defendants assert that Beezley's declaration met the requirements to authenticate the electronic signature.

Civil Code section 1633.9 governs the authentication of electronic signatures. It states, in full, "(a) An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable. [¶] (b) The effect of an electronic record or electronic signature attributed to a person under subdivision (a) is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law." (Civ. Code, § 1633.9.)

Thus, to authenticate an electronic signature, the proponent of the evidence must show that the electronic signature "was the act of the person." (Civ. Code, § 1633.9, subd. (a).) Case law indicates that to meet this burden, the proponent of the evidence must show that the purported signatory—rather than another person—completed the act of electronically signing the document.

Moncibaez compares this case to *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836 (*Ruiz*), in which an employee, Ruiz, filed a wage and hour action against his employer, Moss Bros., which then moved to compel arbitration. (*Id*. at pp. 838-839.) The business manager of Moss Bros., Main, submitted a declaration in which she "summarily asserted that

10

Ruiz 'electronically signed' the 2011 agreement 'on or about September 21, 2011,'" but "Main did not explain how Moss Bros. verified that Ruiz . . . electronically signed the 2011 agreement." (*Id*. at p. 839.) In his opposition to the motion, "Ruiz argued that Main's 'conclusory statement' that he electronically signed the 2011 agreement was 'not enough to prove by a preponderance of the evidence' that he did, in fact, electronically sign the agreement. In his opposing declaration, Ruiz averred he did not recall signing any arbitration agreement on September 21, 2011, or at any other time, and if he had been presented with an agreement that limited his ability to sue Moss Bros. he would not have signed it." (*Id*. at p. 840.) With the reply, Main submitted a second declaration, which explained, "Each employee is required to log into the Company's HR system—each with his or her unique login ID and password—to review and electronically execute the Employee Acknowledgement form, which includes the arbitration agreement. While all employees are required to sign the form, they are free to review it at their leisure while logged into the HR system." (*Id*. at pp. 840-841.) The Court of Appeal noted, "Still, Main did not indicate *whether or if so how* Moss Bros. ascertained that Ruiz electronically signed, or was the person who electronically signed, the employee acknowledgement form, including the 2011 agreement." (*Id*. at p. 841.) The trial court held that Moss Bros. failed to establish that an agreement existed, and Moss Bros. appealed. (*Ibid*.)

The Court of Appeal affirmed on the basis that "Moss Bros. did not present sufficient evidence to support a finding that the electronic signature on the 2011 agreement was the act of Ruiz." (*Ruiz, supra*, 232 Cal.App.4th at p. 842.) The court discussed authentication under Civil Code section 1633.9, and found that

11

Main's declarations were insufficient to meet that standard. "Main summarily asserted in her initial declaration that Ruiz was the person who electronically signed the 2011 agreement . . . but she did not explain how she arrived at that conclusion or inferred Ruiz was the person who electronically signed the 2011 agreement. . . . Main never explained how Ruiz's printed electronic signature, or the date and time printed next to the signature, came to be placed on the 2011 agreement." (*Id.* at pp. 843-844.) Main explained that each employee logged into the company's computer system "using his or her 'unique login ID and password,' to review and sign the employee acknowledgment form. Again, however, Main did not explain how, or upon what basis, she inferred that the electronic signature on the 2011 agreement was 'the act of' Ruiz." (*Id.* at p. 844.) The court continued, "In the face of Ruiz's failure to recall electronically signing the 2011 agreement, the fact the 2011 agreement had an electronic signature on it in the name of Ruiz, and a date and time stamp for the signature, was insufficient to support a finding that the electronic signature was, in fact, 'the act of' Ruiz." (*Ibid.*)

Moncibaez also relies on *Fabian, supra*, 42 Cal.App.5th 1062, in which a homeowner, Fabian, alleged problems with the installation of solar panels in her home. The defendant, Renovate, sought to compel arbitration based on a purported contract with Fabian; it submitted a contract bearing electronic initials and an electronic signature. (*Id.* at p. 1064-1065.) Fabian stated in a declaration that she did not sign any contract, and all of her communications with Renovate had been completed by phone. (*Id.* at p. 1065.) The parties conducted discovery regarding whether Fabian signed a contract. (*Id.* at p. 1066.)

Fabian maintained that she did not sign a contract, and Renovate stated that Fabian signed the document through DocuSign. (*Ibid*.)  The trial court denied Renovate's motion to compel arbitration.

The Court of Appeal affirmed.  The court rejected Renovate's contention that "the Contract bearing Fabian's electronic initials and signature is authenticated by DocuSign. Standing alone, that fact is not sufficient to compel a result in Renovate's favor as a matter of law." (*Fabian, supra*, 42 Cal.App.5th at p. 1068.)  The court noted that "Renovate offered no evidence about the process used to verify Fabian's electronic signature via DocuSign," including how the contract was provided to Fabian or "how Fabian's identification was verified as the person who actually signed the Contract." (*Id*. at p. 1069.) The declarations submitted by Anderson, a Renovate employee, did not fill the evidentiary gap; Anderson did not discuss how the contract was presented to Fabian, explain "the process used to obtain and verify Fabian's 'docusigned' electronic initials and signature," or state "how the electronic signature could have only been placed on the Contract by Fabian." (*Id*. at pp. 1069-1070.) The court stated, "Most importantly, Anderson did not explain how Fabian's electronic initials and signature were the 'act of Fabian' by offering evidence that DocuSign assigned Fabian a unique 'identity verification code' to initial and sign the Contract." (*Id*. at p. 1070.)

In another recent case, *Bannister v. Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541 (*Bannister*), the plaintiff, Bannister, was an employee of a skilled nursing facility that was purchased by the defendant, Marinidence.  Bannister sued for employment-related claims, and Marinidence moved to compel

arbitration, attaching an arbitration agreement Bannister purportedly signed during an onboarding process after Marinidence took over the facility. (*Id.* at p.544.) To authenticate the electronic signature, Marinidence presented evidence that "[t]o access the online onboarding portal, an individual must enter an employee's first and last name and Social Security number, in addition to entering Marinidence's 'Client ID' and pin code (the same 'Client ID' and pin code for all employees). . . . Based on these requirements, according to Marinidence, the electronic signature on the arbitration agreement could only have been placed there by Bannister." (*Id.* at p. 546.) Bannister, however, said that 20 or more employees were onboarded the same day by a Marinidence manager, who entered information into a laptop computer as employees answered questions. "No employee-specific user names or passwords were required to access the onboarding portal, and each employee's Social Security number was available in the employee's personnel file." [The manager] did not inform Bannister or the other employees about an arbitration agreement. According to Bannister, she never saw the arbitration agreement and never clicked 'I agree' or otherwise signed the arbitration agreement during the onboarding process." (*Bannister, supra*, 64 Cal.App.5th at p. 546 .) The trial court denied Marinidence's motion to compel arbitration.

The Court of Appeal affirmed, stating, "Substantial evidence supports the trial court's conclusion that Marinidence failed to authenticate the electronic signature on the arbitration agreement as Bannister's. Marinidence's evidence did not establish that Bannister was assigned a unique, private user name and password such that she is the only person who could

14

have accessed the onboarding portal and signed the agreement; instead, the evidence showed that the requisite 'Client ID' and PIN code was not employee-specific, and [the manager] had access to the information necessary to access the onboarding portal via employee personnel records." (*Bannister, supra*, 64 Cal.App.5th at p. 547.)  The appellate court stated that it would not disturb the trial court's finding that Bannister's version of events was more credible, and "[b]ecause Bannister's evidence showed that she was not the only person who could have executed the arbitration agreement, we disagree that the trial court committed any legal error."  (*Id*. at p.548.)

By contrast, in *Espejo, supra*, 246 Cal.App.4th 1047, this court held that the defendant employer, SCPMG, did sufficiently authenticate the electronic signature of the plaintiff employee, Dr. Espejo.  This court stated that SCPMG's declarant, Tellez, "concluded that the '[plaintiff's] name . . . could have only been placed on the signature pages of the employment agreement and the DRP [dispute resolution procedure] by someone using Dr. Espejo's unique user name and password. . . .  [¶] Given this process for signing documents and protecting the privacy of the information with unique and private user names and passwords, the electronic signature was made by Dr. Espejo' on the employment agreement and the DRP at the date, time, and IP address listed on the documents.  These details satisfactorily meet the requirements articulated in *Ruiz* and establish that the electronic signature on the DRP was 'the act of' Espejo (Civ. Code, § 1633.9, subd. (a)), and therefore provide the necessary factual details to properly authenticate the document."  (*Espejo, supra*, 246 Cal.App.4th at p. 1062.)

15

Here, the evidence shows Moncibaez was not the only person who had access to, and could have signed, the arbitration agreement. As Beezley stated in her declaration, Ramirez accessed the document three times on July 10 and 11, 2017. The notations about access do not state that a signature was entered or that any other changes were made; each entry simply states that the document was "published" at a certain time. Beezley stated that "in the ordinary and usual course of business, prospective talent and employees are prompted to create a unique password upon initial login [to Stericycle's online portal] so as to maintain security of their electronic documents." However, Beezley did not state that a unique username and password was the only way to access the arbitration agreement, thus demonstrating that the electronic signature was "the act of" Moncibaez alone. To the contrary, Ramirez also had access to the document: he accessed it once before Moncibaez, and twice afterward. Moreover, the signature on the arbitration agreement reads "Paul Moncibaez," a name Monciabaez states that he does not typically use, suggesting that he may not have been the person to enter his name into the online form. Because two people accessed the document, Moncibaez does not typically use the name entered on the form, and Moncibaez stated that he did not recall signing it, substantial evidence supports the court's finding that defendants failed to meet their burden of authenticating the electronic signature as "the act of" Moncibaez.

Defendants argue Moncibaez "supplied a litany of facts and admissions indicating that he had signed the Arbitration Agreement." They cite Moncibaez's statements that he was not allowed to review any documents "before signing," and that he felt rushed as he clicked through the documents with Ramirez

16

looking on.  However, it was defendants' burden to prove the existence of an enforceable arbitration agreement by authenticating the purported electronic signature.  We are not persuaded by defendants' contentions that Moncibaez's declaration was insufficient to contradict defendants' evidence, or that the court should have afforded greater weight to certain statements in Moncibaez's declaration.  Under substantial evidence review, we neither judge the credibility of witnesses nor reweigh the evidence.  (See *Fabian, supra*, 42 Cal. App.5th at p. 1067.)

Substantial evidence supports the trial court's holding that defendants failed to authenticate the electronic signature, and therefore did not establish the existence of an enforceable arbitration agreement.  We do not reach defendants' remaining arguments about the enforceability of the agreement.

## DISPOSITION

The trial court's order denying defendants' motion to compel arbitration is affirmed.  Moncibaez is entitled to costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

MANELLA, P. J.

CURREY, J.

17