Filed 4/22/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JAY ESPEJO,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SOUTHERN CALIFORNIA<br>PERMANENTE MEDICAL GROUP et al.,<br><br>    Defendants and Appellants. | B262717<br><br>(Los Angeles County<br>Super. Ct. No. BC562377) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael P. Linfield, Judge. Reversed and remanded with directions.

McNicholas & McNicholas, Matthew S. McNicholas; The deRubertis Law Firm, David M. deRubertis, Alyssa K. Schabloski; Esner, Chang & Boyer, Holly N. Boyer, Shea S. Murphy and Joseph S. Persoff for Plaintiff and Respondent.

Cole Pedroza, Kenneth R. Pedroza and Maureen M. Home for Defendants and Appellants.

## INTRODUCTION

Jay Espejo, M.D., sued defendants Southern California Permanente Medical Group, Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and Joseph Huang, M.D. (collectively, defendants) alleging wrongful termination and whistleblower retaliation. Defendants petitioned to compel arbitration pursuant to Espejo's employment agreement and associated documents. The trial court denied the petition, finding that defendants failed to establish the existence of an enforceable arbitration agreement between the parties. On appeal, defendants argue the trial court erred in reaching that conclusion, and in striking a supplemental declaration filed in support of their petition. They further contend the arbitration agreement was valid and neither procedurally nor substantively unconscionable. We conclude the trial court erroneously excluded the declaration as untimely and further, the declaration established the existence of an agreement to arbitrate. We therefore reverse and remand to the trial court for consideration of the remaining issues raised by the parties.

## FACTUAL AND PROCEDURAL HISTORY

### A.     *Espejo's Lawsuit*

Espejo is a board certified family medicine physician. He was hired as an associate physician by defendant Southern California Permanente Medical Group (SCPMG) effective September 1, 2011. SCPMG is a "general partnership for the practice of medicine." SCPMG contracts with defendant Kaiser Foundation Health Plan, Inc. (Kaiser Health Plan) to provide medical services to Kaiser Health Plan members in Southern California. Defendant Kaiser Foundation Hospitals (Kaiser) is the corporate entity that owns and operates the medical centers and hospitals through which SCPMG provides these medical services. Defendant Huang is a partner physician and administrator with SCPMG.

Espejo filed a complaint against defendants on October 30, 2014, alleging causes of action for wrongful termination in violation of public policy and whistleblower

retaliation. Espejo claimed he was terminated in retaliation for his reports of "inappropriate prescribing practices" by another physician working at a Kaiser facility.

B. *Petition to Compel Arbitration*

On December 19, 2014, defendants filed a petition to compel arbitration. The petition alleged that Espejo's employment with SCPMG was "governed" by three documents: the Employee Physician Contract, the Dispute Resolution Procedure (DRP), and SCPMG's Rules and Regulations (R&R). Defendants alleged these documents were provided to Espejo as part of his offer of employment. Specifically, on May 3, 2011, SCPMG sent an email to Espejo containing his offer of employment as a staff physician with SCPMG and directing him to follow the included hyperlink to SCPMG's "Applicant Home Page and your employment contract." The email further stated that Espejo would have until May 24, 2011 "to review and electronically sign or decline" his employment contract.

In a declaration submitted in support of the petition, Julie Tellez, a SCPMG systems consultant,[1] claimed that the Applicant Home Page to which Espejo was routed contained hyperlinks to four documents—a copy of his employment agreement, the DRP, the R&R, and a benefits handbook.

According to Tellez, "[s]ince 2006, the majority of Associate SCPMG physician employee contracts and agreements, including those of [Espejo], are [sic] executed online. The online process requires the physician to review and electronically sign his or her employment contract and all related agreements." Tellez further stated that on May 22, 2011 Espejo "electronically signed" the copy of the DRP attached as an exhibit to defendants' petition.

Defendants also included a declaration from Erin Bui, a project manager employed by SCPMG whose duties included "reviewing physician employment agreements and advising" regarding compensation policies. Bui stated that in order to "finalize his employment agreement, Dr. Espejo was required to digitally sign his employment

[1]Tellez described part of her job responsibilities as "maintaining and troubleshooting the online system for SCPMG physician employment contracts."

3

agreement and the [DRP]."  Bui then stated, without further explanation, that "Espejo signed both documents."

Defendants attached copies of all three documents to their petition for arbitration. The Employee Physician Contract sets forth the terms and conditions of the employment relationship between Espejo and SCPMG.  Section XII, titled "Dispute Resolution and Mandatory Binding Arbitration," states:  "Physician and SCPMG agree to follow the Dispute Resolution Procedure, Rules and Regulations, section 1I, a copy of which is attached."  The last section, immediately above the signature block, contains an acknowledgement by the signing physician that he or she has read the contract and agrees to its terms, "including those set forth in Section XII herein regarding internal dispute resolution and arbitration."  The physician signature line contains the typed name "Jay Baniaga Espejo" and the date May 22, 2011 at 3:15 p.m. The next line lists an IP address purportedly identifying the location where the document was signed.  The contract also was electronically signed by SCPMG's Area Medical Director on May 3, 2011.

Defendants attached three versions of the R&R to their petition, each identified as a "Rewrite" from 2009, 2011, and 2013, respectively.  Defendants do not specify which version was provided in the hyperlinks sent to Espejo in 2011.  Section 1.I in all three versions contains a "Dispute Resolution Procedure," and states that "[t]his DRP applies to any dispute involving a Physician and SCPMG that would otherwise be cognizable in a court of law," with certain identified exceptions not relevant here.  We refer to Section 1.I of the R&R as the "R&R-DRP."[2]

Finally, the copy of the DRP included with defendants' petition bears the full title "Dispute Resolution Procedure for All Physicians and SCPMG Approved by SCPMG Board of Directors May 18, 2006."  It contains the same language regarding its applicability as the R&R-DRP.  The acknowledgement paragraph above the signature

---

[2]In their petition and on appeal, defendants contend that the R&R-DRP and the DRP "signed by Dr. Espejo are identical in relevant part" and focus further discussion on the DRP.  Espejo has not asserted that any differences in the two documents (or in the multiple versions of the R&R) are relevant to this appeal.

4

line indicates an agreement that the signer has received and read a copy of the DRP, and agrees to abide by the DRP, "and by any changes made to it from time to time by the SCPMG Board of Directions." The signature line bears the typed name "Jay Baniaga Espejo" and is dated May 22, 2011 at 3:16 p.m. The following line states the document "was signed" at the same IP address as the employment agreement.

C.      *Supplemental Declaration*

On January 22, 2015, defendants filed a supplemental declaration from Tellez in support of their petition to compel arbitration.[3] In her supplemental declaration, Tellez supplied additional details regarding the electronic review and signature process for SCPMG's employee agreements. Specifically, she stated that once the "Area Medical Director decides to make a physician an offer of employment, [the director] completes the employment agreement, and electronically signs the agreement, an email is generated to the applicant" with a link to the SCPMG Applicant Homepage. Access to the applicant homepage "requires the use of a private and unique username and password," both of which are provided by phone "directly and orally to the applicant." After logging into SCPMG's online system with this username and password, "the first thing Dr. Espejo would be required to do is re-set his password to one of his own choosing. He cannot proceed to the next page unless he re-sets his password." At that point, according to Tellez, Espejo would have to "opt to agree to complete the employment documents using an electronic signature." Once he agreed, he would be directed to the portion of the Applicant Homepage containing the four hyperlinks to his employment agreement, the DRP, the R&R, and a benefits handbook. "Dr. Espejo only had access to these documents by logging in and using his unique user name and password."

---

[3]The record does not indicate defendants gave any explanation for filing the supplemental declaration on that date. However, it would later become clear that they were attempting to meet the requirements for authentication of an electronic signature set forth in *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836 (*Ruiz*), which was filed on December 23, 2014, four days after defendants filed their initial petition to compel arbitration.

5

Tellez further elaborated on the signature process. "On the signature page of the employment agreement Dr. Espejo was prompted to either accept or decline the employment agreement." If he accepted, "he was prompted to complete his name as he would sign it. Whatever name he typed into this entry is what populated on the signature line of the contract." "Once that information was input and accepted by Dr. Espejo, then the employment agreement was finalized, including his name, date, time, and the IP address where Dr. Espejo electronically signed the agreement." Tellez then outlined the same process with respect to the DRP. She stated that the "name Jay Baniaga Espejo could have only been placed on the signature pages of the employment agreement and the DRP by someone using Dr. Espejo's unique user name and password. . . . [¶] Given this process for signing documents and protecting the privacy of the information with unique and private user names and passwords, the electronic signature was made by Dr. Espejo" to the employment agreement and the DRP at the date, time, and IP address listed on the documents. Tellez therefore concluded that the copies of the employee agreement and the DRP attached to defendants' petition were true and correct copies of the documents "electronically signed by Dr. Espejo on May 22, 2011, and kept and maintained in SCPMG's records."

      D.    *Opposition and Reply*

Espejo filed his opposition to the petition four days later on January 26, 2015. Citing *Ruiz,* he argued that defendants failed to properly authenticate his signature on the DRP. In his accompanying declaration, Espejo admitted he received an email from SCPMG on May 3, 2011 with a hyperlink to the Applicant Homepage. He claimed he had a "specific recollection of electronically signing the Employee Physician Contract" after inputting his username and password, following the hyperlink to the agreement, and reviewing the agreement. However, he stated he did not "recall seeing or accessing the DRP . . . at the time I signed the employment contract," and did not recall ever signing the DRP, "electronically or otherwise. I specifically recall that I typed out my name and submitted my electronic signature only once—when I signed the employment contract." Espejo further stated that his "custom and practice" was to "review documents before I

6

sign them," and he therefore did not believe he would have signed the DRP, an eight page document, one minute after signing the employment contract. Espejo also contended he had never seen the R&R prior to the lawsuit and recalled accessing only the employment contract through the online Applicant Homepage.

Espejo also filed objections to admission of the DRP as an exhibit and to related statements made in defendants' declarations, largely based on the same argument that the DRP was not authenticated and the related statements regarding Espejo's signature therefore lacked foundation.

In addition, Espejo moved to strike the supplemental Tellez declaration as untimely, arguing that it should have been submitted as part of defendants' moving papers no later than 16 court days before the scheduled hearing, or by January 14, 2015.

Defendants opposed the motion to strike, arguing that the supplemental Tellez declaration was timely, as they were not required to authenticate Espejo's electronic signature until the signature was disputed. Thus, while defendants contended they could have filed the supplemental declaration as part of their reply papers, they "prophylactically" filed the document in response to the issuance of the *Ruiz* decision. Defendants further asserted that Espejo was not prejudiced by the supplemental filing, as it was filed and served prior to the deadline for his opposition to the petition to compel arbitration, and prior to Tellez's deposition on January 23, 2015.

E.    *Statement of Decision*

The court issued its statement of decision on February 27, 2015, denying defendants' petition. The court struck the supplemental Tellez declaration as untimely pursuant to Code of Civil Procedure section 1005, subdivision (b),[4] which requires that all moving papers be served and filed 16 court days prior to the hearing. The court further sustained Espejo's objections to the other declarations filed by defendants. Relying on *Ruiz,* the trial court found that "defendants here fail to provide evidence with their moving papers to authenticate" the DRP, and therefore "failed to meet their burden

_____

[4]All further statutory references are to the Code of Civil Procedure unless otherwise stated.

7

to show that an arbitration agreement exists." The court declined to reach the remaining issues "of determining whether [Espejo's] claims are within the scope of the arbitration provision or whether the agreement is unenforceable due to procedural and substantive unconscionability." Defendants timely appealed pursuant to section 1294, subdivision (a).

## DISCUSSION

A.    *Forfeiture*

Relying heavily on the supplemental Tellez declaration, defendants argue on appeal that they met their burden to establish the existence of an arbitration provision. However, as a preliminary matter, Espejo contends defendants failed to adequately challenge the trial court's ruling striking the supplemental declaration, thereby forfeiting their right to raise that issue on appeal. The exclusion of the supplemental declaration is crucial—without it, defendants essentially concede they cannot meet the test for authentication of an electronic signature under *Ruiz*.

As articulated in defendants' opposition to Espejo's motion to strike the supplemental declaration, there are two distinct bases for a claim that the trial court abused its discretion in striking the supplemental declaration. First, defendants could have argued, as they did before the trial court, that even if the supplemental declaration was untimely, the trial court erred in striking it under the unusual circumstances presented here, namely that defendants filed the declaration promptly in response to the issuance of the opinion in *Ruiz* and did so prior to the deadline for Espejo's opposition and the Tellez deposition.[5] However, we agree with Espejo that defendants did not raise this argument in their opening brief on appeal. This contention is therefore forfeited. (See, e.g., *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239, fn. 16; *Diamond Springs Lime Co. v. American River Constructors* (1971) 16 Cal.App.3d 581, 609.)

---

[5]The trial court, having stricken the supplemental declaration, then relied on the holding in *Ruiz* in denying the arbitration petition.

The second basis upon which defendants could and did challenge the trial court's ruling is the argument that their supplemental declaration was in fact timely and it was therefore error for the trial court to strike it as untimely. Defendants argued at length in their opening brief on appeal that they were not required to authenticate Espejo's signature on the DRP in order to meet their prima facie burden in petitioning to compel. The crux of this argument is that if defendants were not required to authenticate the DRP in their moving papers, then the supplemental declaration, which was filed to provide such authentication, was not untimely and could have been filed with defendants' reply. Consequently, as defendants put it, the "trial court erred in requiring [defendants] to authenticate the DRP as part of their prima facie showing." While defendants could have more clearly connected their argument regarding their burden of proof and their ultimate point about timeliness, we conclude the issue was sufficiently raised to preserve the argument on appeal. Espejo understood the argument and substantively responded in his brief. Thus we turn to the merits of defendants' contention.

B.     *Timeliness of Supplemental Declaration*

As previously noted, the issue of timeliness turns on whether defendants were required to authenticate Espejo's signature on the DRP as part of their initial petition to compel arbitration. Defendants contend they were not required to introduce such evidence until the authenticity of the document was challenged. We agree.

1.     *Governing Principles*

We review an order denying a petition to compel arbitration for abuse of discretion unless a pure question of law is presented. In that case, the order is reviewed de novo. (*Gorlach v. Sports Club Co.* (2012) 209 Cal.App.4th 1497, 1505; *California Parking Services, Inc. v. Soboba Band of Luiseño Indians* (2011) 197 Cal.App.4th 814, 817.) Here, the issue of when defendants were required to provide evidence to authenticate the purported arbitration agreement presents a legal question, subject to de novo review.

The principles governing petitions to compel arbitration are well established. Public policy favors contractual arbitration as a means of resolving disputes. (*Mercury*

9

*Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 342.) But that policy "'"does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration."'" (*Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc.* (2005) 129 Cal.App.4th 759, 763.)

A petition to compel arbitration is a suit in equity seeking specific performance of an arbitration agreement. (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 347.) Section 1281.2 provides that "on petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that . . . [g]rounds exist for the revocation of the agreement."

Section 1281.2 establishes "a summary proceeding" for resolving such petitions to compel arbitration. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.) In *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 (*Rosenthal*), our Supreme Court explained the requisite procedure: "[W]hen a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable. Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence. If the party opposing the petition raises a defense to enforcement . . . that party bears the burden of producing evidence of, and proving by a preponderance of the evidence, any fact necessary to the defense." The high court reiterated these procedures in *Engalla*, *supra*, 15 Cal.4th at p. 972 and noted, "[i]n these summary proceedings, the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the

10

court's discretion, to reach a final determination." (*Ibid.*, citing *Rosenthal, supra*, 14 Cal.4th at pp. 413-414.)

2. *Petitioner's Burden*

Defendants rely primarily on *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 217–219 (*Condee*) in support of their contention that they were not required to establish the authenticity of Espejo's signature on the DRP as part of their initial petition. In *Condee, supra*, 88 Cal.App.4th at pp. 217–219, the court addressed the bare pleading requirements for a petition to compel arbitration. The plaintiffs asserted claims arising out of the death of a relative living in a residential care center. (*Id*. at p. 217.) In seeking to compel arbitration on the basis of an agreement executed when the relative was admitted to the center, the defendants submitted a declaration from their custodian of records purporting to authenticate the agreement. (*Ibid*.) The trial court denied the petition on the grounds of inadequate authentication, even though the plaintiffs had not challenged the authenticity of the signatures on the agreement. (*Ibid*.)

Reversing, the appellate court concluded that in the context of a petition to compel arbitration, "it is not necessary to follow the normal procedures of document authentication." (*Condee, supra*, 88 Cal.App.4th at p. 218.) Pointing to the language of section 1281.2, the court stated that "as a preliminary matter the [trial] court is only required to make a finding of the agreement's existence, not an evidentiary determination of its validity." (*Condee, supra*, at pp. 218-219.) The court also noted that the pertinent court rule did not oblige the petitioner to introduce the actual agreement into evidence. (*Id*. at p. 219, citing Cal. Rules of Court, rule 371 (now rule 3.1330.) Under that rule, a petition to compel arbitration pursuant to section 1281.2 "must state . . . the provisions of the written agreement and the paragraph that provides for arbitration. The provisions must be stated verbatim or a copy must be attached to the petition and incorporated by reference." (Rule 3.1330.) Thus, the *Condee* court concluded that by attaching a copy of the agreement to its petition, defendants had satisfied their initial burden of establishing the existence of an arbitration agreement. (*Condee, supra*, 88 Cal.App.4th at p. 218; see also *Hotels Nevada* (2006) 144 Cal.App.4th 754, 765 [petitioner "may meet its burden by

11

complying with" rule 3.1330 (formerly rule 371)].) As the court noted, "although no evidence was ever introduced to verify the signature's authenticity, it was never challenged." (*Condee, supra*, 88 Cal.App.4th at p. 218.)

Several appellate courts have followed *Condee* in analyzing the petitioner's initial burden under section 1281.2. In *Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 701-702, the plaintiff's complaint asserted claims predicated on a contract. In seeking to compel arbitration on the basis of the contract's arbitration provisions, the defendants pointed to the allegations of the complaint, and also submitted a declaration from an employee, to which a copy of the contract was attached. (*Id*. at p. 702.) Relying on *Rosenthal* and *Condee*, the appellate court concluded that the defendants "made a sufficient prima facie showing of an agreement to arbitrate, based not only on the allegations of the complaint but also on their moving papers and on their proffer of the [agreement]." (*Id*. at pp. 709-710.)

Although the court in *Ruiz, supra*, 232 Cal.App.4th 836, reached the opposite conclusion regarding the sufficiency of the defendant's showing, it applied the same principles. There, the defendant employer petitioned to compel arbitration of plaintiff employee's wage and hour claims. Along with its petition, the employer attached a copy of a written arbitration agreement and a declaration of its business manager, who "summarily asserted" that the plaintiff, Ruiz, electronically signed the agreement. (*Id*. at p. 839.) In opposition, Ruiz claimed he did not recall signing the agreement and argued that defendant had failed to prove that he had done so. (*Id*. at p. 840.) Defendant filed a reply declaration from the same manager in an attempt to authenticate Ruiz's signature. (*Ibid*.) The court considered both declarations and concluded defendant failed to establish that Ruiz placed the electronic signature on the document. (*Id*. at p. 844.) The court further rejected defendant's argument that pursuant to *Condee*, it was not required to authenticate Ruiz's signature at all as part of its burden in seeking to compel arbitration. The court noted: "Properly understood, *Condee* holds that a petitioner is not required to authenticate an opposing party's signature on an arbitration agreement *as a preliminary matter* in moving for arbitration *or* in the event the authenticity of the

12

signature is not challenged. [Citations.]" (*Id.* at p. 846.) But "[i]n the face of Ruiz's failure to recall signing the 2011 agreement, Moss Bros. had the burden of proving by a preponderance of the evidence that the electronic signature was authentic (Evid. Code, § 1401)." (*Ibid.*; see also *Nanavati v. Adecco USA, Inc.* (N.D. Cal. 2015) 99 F.Supp.3d 1072, 1076 ["the *Ruiz* court found that the employer bears the burden of proof to authenticate a signature once the employee contests the validity of the arbitration agreement"].)

Espejo suggests that *Condee* has been "called into doubt," citing *Toal v. Tardif* (2009) 178 Cal.App.4th 1208 (*Toal*). We do not find *Toal* applicable to the issue before us. In *Toal*, the same division that decided *Condee* examined whether the petitioners had met their burden to establish the existence of an arbitration agreement by attaching a copy of an agreement signed by respondent's counsel. (*Id.* at p 1220-1221.) But the record contained no indication that the parties themselves had agreed to the stipulation; indeed, in opposition, one of the defendants asserted that he had not authorized his attorney to enter into the stipulation. (*Id.* at p. 1215.) The court concluded that a party "does not meet the burden of proving the existence of a valid arbitration contract simply by submitting a copy of the contract signed by a party's attorney rather than by the party personally." (*Id.* at p. 1223.) In a footnote, the court added that "[u]nder the *Condee* rationale, '[o]nce the petitioners [allege] that the agreement exists, the burden [shifts] to respondents to prove the falsity of the purported agreement,'" and noted that "[t]o the extent *Condee* conflicts with *Rosenthal*, our Supreme Court's decision is controlling." (*Id.* at p. 1219, fn. 8 [citations omitted].)

In context, the brief discussion of *Condee* by the court in *Toal* regarding a petitioner's ultimate burden has no bearing on the question before us—whether defendants may meet their *initial* burden to show an agreement to arbitrate by attaching a copy of the arbitration agreement purportedly bearing the opposing party's signature. We conclude they may, in compliance with the requirements of section 1281.2 and rule 3.1330.

13

Accordingly, we conclude that defendants here met their initial burden by attaching to their petition a copy of the purported arbitration agreement bearing Espejo's electronic signature. Once Espejo challenged the validity of that signature in his opposition, defendants were then required to establish by a preponderance of the evidence that the signature was authentic.

### 3. *Error in Striking Supplemental Tellez Declaration*

Because defendants were not required to establish the authenticity of Espejo's signature on the DRP until challenged by Espejo in his opposition, they were not required to file the supplemental Tellez declaration pursuant to the deadline set by section 1005, subdivision (b) for a party's moving papers. Rather than wait until their reply, defendants filed the supplemental declaration in advance of Espejo's opposition. The supplemental declaration was therefore timely. The trial court abused its discretion in finding it was untimely under section 1005 and striking it on that basis.

### C. *Authentication of Espejo's Signature Pursuant to Tellez's Supplemental Declaration*

Taking into account the supplemental Tellez declaration in support of defendants' petition, the parties' dispute over whether defendants established the existence of an arbitration agreement turns almost exclusively on whether the supplemental declaration sufficiently authenticates Espejo's electronic signature on the DRP. The parties and the trial court relied on *Ruiz, supra*, 232 Cal.App.4th 836, for guidance on this issue and we find it useful to examine that court's analysis in some detail.

"Under Civil Code section 1633.7, enacted in 1999 as part of the Uniform Electronic Transactions Act (Civ. Code, § 1633.1 et seq.; Stats. 1999, ch. 428, § 1, pp. 2809–2816), an electronic signature has the same legal effect as a handwritten signature. [Citation.]" (*Ruiz, supra*, 232 Cal.App.4th at p. 843.) "Still, any writing must be authenticated" before it may be received in evidence. (*Ibid*., citing Evid. Code, § 1401; *People v. Valdez* (2011) 201 Cal.App.4th 1429, 1435; *People v. Goldsmith* (2014) 59 Cal.4th 258, 271.) "Civil Code section 1633.9 addresses how a proponent of an electronic signature may authenticate the signature—that is, show the signature is, in fact,

14

the signature of the person the proponent claims it is.  The statute states:  '(a) An electronic record or electronic signature is attributable to a person if it was the act of the person.  *The act of the person may be shown in any manner*, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.'  (Civ. Code, § 1633.9, subd. (a), italics added.)"  (*Ruiz, supra*, at p. 843.)

As discussed above, in *Ruiz* the court considered two declarations submitted by defendant's business manager, Mary Main, purporting to authenticate Ruiz's electronic signature on an arbitration agreement.  (*Ruiz, supra*, 232 Cal.App.4th at pp. 840-841.)  As detailed by the *Ruiz* court, in the first declaration, Main "summarily asserted . . . that Ruiz was the person who electronically signed the 2011 agreement . . ., but she did not explain how she arrived at that conclusion."  (*Id*. at p. 843.)  In other words, Main "never explained how Ruiz's printed electronic signature, or the date and time printed next to the signature, came to be placed on the 2011 agreement.  More specifically, Main did not explain how she ascertained that the electronic signature on the 2011 agreement was 'the act of' Ruiz" as required by Civil Code section 1633.9.  (*Id*. at pp. 843-844.)  The court then explained why Main's second declaration, offered to rebut Ruiz's assertion that he did not recall signing the agreement, did not provide the necessary authentication:  ". . . Main explained in her reply declaration that the 2011 agreement was part of an employee acknowledgment form that 'is' presented to all Moss Bros. Employees . . ., and each employee is required to log into the company's HR system, using his or her 'unique login ID and password,' to review and sign the employee acknowledgment form.  Again, however, Main did not explain how, or upon what basis, she inferred that the electronic signature on the 2011 agreement was 'the act of' Ruiz.  (Civ. Code, § 1633.9, subd. (a).) This left a critical gap in the evidence supporting the petition.

Indeed, Main did not explain that an electronic signature in the name of 'Ernesto Zamora Ruiz' could only have been placed on the 2011 agreement . . . by a person using Ruiz's 'unique login ID and password'; that the date and time printed next to the electronic signature indicated the date and time the electronic signature was made; that all

15

Moss Bros. employees were required to use their unique login ID and password when they logged into the HR system and signed electronic forms and agreements; and the electronic signature on the 2011 agreement was, therefore, apparently made by Ruiz on September 21, 2011, at 11:47 a.m. Rather than offer this or any other explanation of how she inferred the electronic signature on the 2011 agreement was the act of Ruiz, Main only offered her unsupported assertion that Ruiz was the person who electronically signed the 2011 agreement. In the face of Ruiz's failure to recall electronically signing the 2011 agreement, the fact the 2011 agreement had an electronic signature on it in the name of Ruiz, and a date and time stamp for the signature, was insufficient to support a finding that the electronic signature was, in fact, 'the act of' Ruiz." (*Ruiz, supra*, 232 Cal.App.4th at p. 844.)

Turning to the case before us, we find the supplemental Tellez declaration offered the critical factual connection that the declarations in *Ruiz* lacked. Tellez detailed SCPMG's security precautions regarding transmission and use of an applicant's unique user name and password, as well as the steps an applicant would have to take to place his or her name on the signature line of the employment agreement and the DRP. Based on this procedure, she concluded that the "name Jay Baniaga Espejo could have only been placed on the signature pages of the employment agreement and the DRP by someone using Dr. Espejo's unique user name and password. . . . [¶] Given this process for signing documents and protecting the privacy of the information with unique and private user names and passwords, the electronic signature was made by Dr. Espejo" on the employment agreement and the DRP at the date, time, and IP address listed on the documents. These details satisfactorily meet the requirements articulated in *Ruiz* and establish that the electronic signature on the DRP was "the act of" Espejo (Civ. Code, § 1633.9, subd. (a)), and therefore provide the necessary factual details to properly authenticate the document.[6]

---

[6]We reject Espejo's contention that the supplemental Tellez declaration does not eliminate the possibility that his signature on the DRP was "merely populated onto the DRP once Plaintiff signed the Employment Agreement." This suggestion is inconsistent

16

We therefore need not reach defendants' alternate contention that Espejo's Employee Physician Contact incorporated, and therefore established, a valid arbitration agreement.  Further, because the trial court concluded defendants had not demonstrated the existence of an arbitration agreement, it did not reach Espejo's claims that the agreement was unenforceable due to lack of mutual assent, procedural and substantive unconscionability, or attempted joinder by non-signatory defendants.  We therefore remand to the trial court for consideration of these issues.

## DISPOSITION

Reversed and remanded for further proceedings consistent with this opinion. Defendants are awarded their costs on appeal.

## CERTIFIED FOR PUBLICATION

COLLINS, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

---

with Tellez's description of the online review and signature process for each of the two documents.