Filed 2/13/25 Aguilar v. Midas Trucking CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ALEJANDRO AGUILAR et al., | B331192 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. |
| v. | No. 22STCV39767) |
| MIDAS TRUCKING, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stuart M. Rice, Judge. Affirmed.

Ogletree, Deakins, Nash, Smoak & Stewart, Tim L. Johnson, Nikolas T. Djordjevski, Yousaf M. Jafri, and Keenan P. O'Connor for Defendant and Appellant.

King & Siegel and Elliot J. Siegel for Plaintiffs and Respondents.

————————————

# INTRODUCTION

Midas Trucking appeals from the trial court's order denying Midas's motion to compel its former employee Alejandro Aguilar to arbitrate claims arising out of his employment. The court ruled Midas failed to authenticate an electronic signature on an arbitration agreement purportedly presented to Aguilar during the "onboarding" process for new hires. Midas argues the court erred in excluding much of its owner's declaration detailing the onboarding process and in ruling Midas did not meet its burden with admissible evidence to show the purported signature was Aguilar's. We conclude that the trial court did not abuse its discretion in excluding most of the owner's declaration and that the remaining evidence does not compel a decision in favor of Midas. Therefore, we affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A.  *Aguilar Files This Action Against Midas, and Midas Moves To Compel Arbitration*

Aguilar worked as a delivery truck driver for Midas from June 2021 to April 2022. In December 2022 Aguilar filed a putative class action, a representative action under the Private Attorneys General Act (PAGA) (Lab. Code, § 2698 et seq.), and individual claims for various Labor Code and related violations. Midas filed a motion to dismiss the putative class action allegations and the PAGA claims and to compel Aguilar to arbitrate his individual claims. The motion was based on an agreement Midas contended showed Aguilar agreed to arbitrate any individual causes of action arising out of or relating to his

2

employment with Midas and waived his right to bring collective actions.

Midas submitted a declaration from its owner Michael Ross, who stated he had personal knowledge of the matters in his declaration because he was the owner of the company and had reviewed Midas's business records and "the onboarding documents that apply to all [Midas] employees." Ross said that on June 14, 2021 Aguilar "executed an arbitration agreement entitled 'Mutual Agreement to Individually Arbitrate Disputes.'" Ross attached as exhibit 1 to his declaration an unsigned form agreement with the same title.

In his declaration Ross described the company's "onboarding" process, which generally had prospective employees sign an arbitration agreement and the company's employee handbook. According to Ross, Midas provides delivery services for Amazon Logistics, Inc., which delivers packages for the online shopping company Amazon. Ross said that, when Midas hires a new driver, Midas "creates a profile for the employee using their name and e-mail address, which causes the onboarding system to send the individual an e-mail." Ross provided a screenshot of a sample email that suggests the email originated from the "Amazon Logistics Team."

Ross stated the email from Amazon Logistics provides instructions for the new employee to access the onboarding process. There is a link to "Sign in" to create an account. According to Ross, prospective employees must verify their email address using a "unique one-time password that the system sends to their e-mail address, and then the individual sets their own private password." After creating an account, the prospective employee "receive[s] an invitation to join [Midas] and continue

3

onboarding by clicking on 'Accept Invitation.'" That action "takes the potential new employee to another page instructing them to download an application to continue with the onboarding process." The onboarding system refers to the application as the "Amazon Flex app," and Ross included in his declaration screenshots of the various steps an employee takes while using the Amazon Flex app. To launch the app, the potential employee must enter his or her email address and the password previously used to create an account. The app displays a page consisting of six sections for the employee to complete, including "About You" and "Arbitration Agreement." When the user selects "Arbitration Agreement," the app displays an agreement, which the user can scroll through and read.

The arbitration agreement states in part: "**<u>MANDATORY ARBITRATION</u>. THE EMPLOYEE AND COMPANY AGREE THAT ANY COVERED CLAIM . . . WHETHER BASED IN CONTRACT, TORT, STATUTE, COMMON LAW, FRAUD, MISREPRESENTATION OR ANY OTHER LEGAL OR EQUITABLE THEORY, SHALL BE SUBMITTED TO INDIVIDUAL BINDING ARBITRATION.**" "**Covered claims**" include "all past, current, and future grievances, disputes, claims, issues, or causes of action (collectively, 'claims') under applicable federal, state or local laws, arising out of or relating to (a) Employee's application, hiring, hours worked, services provided, and/or employment with [Midas] or the termination thereof, and/or (b) a [Midas] policy or practice, or [Midas's] relationship with or to a customer, vendor, or third party, including without limitation claims Employee may have against [Midas] . . . , or that [Midas] may have against Employee." The agreement also states the employee acknowledges and agrees

4

that "any claims brought by the Employee against" Midas, "whether brought jointly or severally," "shall be subject to arbitration under this Agreement." And the agreement includes a waiver of the employee's right to bring class actions, collective actions, consolidated actions, and representative actions, to the "absolute maximum extent permitted by law." The agreement states "a court of law must resolve any dispute concerning the validity and enforceability of the Agreement, and the validity, enforceability or interpretation of the provisions pertaining to class, collective, and representative action waivers."

According to Ross, the user must click a box beside the statement "I Agree and Accept" at the end of the arbitration agreement before continuing the onboarding process. The Amazon Flex app then displays a screen showing the six sections of information the potential employee must provide, with the notations "Complete" and a green check mark appearing in the "Arbitration Agreement" section. Ross stated these notations "indicat[e] the individual has electronically accepted" the arbitration agreement. And he said, "No one other than the employee is able to access the employee's account and accept the Agreement—the employee must do that themselves."

Ross stated Aguilar "accepted the Agreement through the onboarding process by completing the steps above using his own unique username/email, account, and unique, private password." Attached to Ross's declaration as exhibit 2 was a document Ross described as "a copy of the on-line record showing the company name, employee name, unique transporter identification number,

and date and time [Aguilar] accepted the Agreement." This is what exhibit 2 says:

| company name | employee name | unique transporter id | arbitration agreement completed date pst |
|---|---|---|---|
| Midas Trucking Inc. | Alejandro Aguilar | A3247RX70ZWSF1 | 2021-06-14 21:18:25.11 |

According to Ross, "[t]he name 'ALEJANDRO AGUILAR' could have only been placed by someone using [Aguilar's] unique username and password. Given the process for signing the Agreement and protecting the privacy of the information with unique and private usernames and passwords, the electronic signature could only have been made by [Aguilar]."

Aguilar opposed Midas's motion to compel arbitration, objected to the admissibility of most of Ross's declaration, and submitted a declaration by Aguilar. Aguilar argued, among other things, Midas had not authenticated the electronic signature on the arbitration agreement as Aguilar's. Aguilar stated in his declaration: "I do not recall receiving, reviewing, or electronically acknowledging or signing an arbitration agreement relating to my employment with Midas Trucking." Aguilar argued that Ross lacked personal knowledge to make virtually all the statements in his declaration concerning Midas's onboarding process and that Ross "merely describes the end-user experience of using Amazon's onboarding application. However, he has no personal knowledge—and does not establish how he would obtain personal knowledge—of the workings of Amazon's onboarding system, including as to whether Amazon provides unique one-time passwords, secures users' accounts such that no one other than the user can access the account, or authenticates signatures with a unique transporter identification number." Aguilar also objected to the admissibility of exhibit 2 because it lacked

6

foundation and because Ross did not have personal knowledge to provide that foundation.

After Aguilar filed his opposition to the motion, Midas submitted a declaration by Alexis Cantwell-Badyna, an employee of Amazon with "responsibility for certain functions related to the Amazon Delivery Service Partner . . . program, including the online registration process for [Midas] employee-drivers." Cantwell-Badyna stated she reviewed business records related to the online registration process to determine whether Aguilar "electronically agreed to and accepted" the arbitration agreement. Based on that review, Cantwell-Badyna stated Midas employees agree and accept the arbitration agreement by "clicking the 'I Agree and Accept' button, which appears below the full text [of the agreement] on the individual's computer or device screen. When the Midas employee clicks the 'I Agree and Accept' button, the system records and stores the date of the individual's agreement and acceptance." Cantwell-Badyna further stated: "According to the online registration business records, [Aguilar] clicked 'I Agree and Accept' to the terms and conditions of the Arbitration Agreement on June 14, 2021 at 9:18 p.m. Pacific Time." Attached to Cantwell-Badyna's declaration as exhibit 1 were the form arbitration agreement that had been attached as exhibit 1 to Ross's declaration and the online record that had been attached as exhibit 2 to Ross's declaration, although Cantwell-Badyna did not state it was a true and correct copy generated by the onboarding system showing that Aguilar signed. Aguilar objected to Cantwell-Badyna's declaration on various grounds, including lack of foundation and personal knowledge.

In its reply brief Midas argued that it met its initial burden of proof by attaching to Ross's declaration "a copy of the

7

Agreement with [Aguilar's] electronic signature" and that Ross authenticated Aguilar's electronic signature. Midas also argued Ross and Cantwell-Badyna "clearly set forth the steps [Aguilar] had to take to execute the Agreements electronically" and the "'security precautions regarding use of an applicant's username and password.'" Therefore, Midas argued, the purported electronic signature "could only have been made by [Aguilar]."

B. *The Trial Court Denies Midas's Motion To Compel Arbitration*

The trial court denied Midas's motion to compel arbitration. The trial court sustained all but one of Aguilar's evidentiary objections to Ross's declaration, thus excluding the majority of Ross's statements about the onboarding process. The court stated: "Ross gives no explanation of how he, the owner of Midas Trucking, has the personal knowledge to describe the onboarding process which his employees go through. [Ross] does not specify whether the platform is controlled by Midas Trucking, Amazon, or some other entity, nor even what is the platform. Assuming that, as the screenshots [attached to Ross's declaration] suggest, the onboarding platform is controlled by Amazon, [Ross] gives no testimony as to how he would know how it works or what an individual must do to use it." The court also sustained Aguilar's objection to exhibit 2 to Ross's declaration because Ross did not explain where the document "came from or how he could determine that it is what he claims it to be." The court sustained in part Aguilar's objection to Ross's statement Aguilar "executed" the arbitration agreement. The court ruled that the "question of whether [Aguilar] executed the agreement is an ultimate question for the Court," but that Ross could "authenticate the

8

document which [Midas] contends [Aguilar] executed" (i.e., the unsigned form).  The court overruled Aguilar's objections to Cantwell-Badyna's declaration and said she had sufficient foundation "to discuss the functions she has responsibility for, including 'the online registration process for [Midas] employee-drivers.'"

The court ruled the admissible evidence did "not suffice to show that the purported signature (which is apparently a timestamped record of a button-press, rather than something affixed to a copy of a document) was the act of [Aguilar] assenting to the Agreement."  The court explained Midas did not submit admissible evidence Aguilar was the person who caused the timestamped record to be created.  The court likened Midas's "showing" to that in *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836 (*Ruiz*), where the court denied an employer's motion to compel arbitration.  (*Id.* at pp. 843-844; see *ibid.* [employer's declarant failed to explain how the employee's "printed electronic signature, or the date and time printed next to the signature, came to be placed" on the agreement or "how she ascertained that the electronic signature . . . was 'the act of'" the employee].)  Midas timely appealed from the trial court's order denying its motion to compel arbitration.[1]

## DISCUSSION

Midas argues Ross's declaration met Midas's burden of proof to authenticate Aguilar's electronic signature on the

---

[1] An order denying a motion to compel arbitration is appealable.  (*Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 66.)

9

arbitration agreement.  Midas also argues the trial court should not have excluded the challenged portions of Ross's declaration. Midas has it backward:  We first consider whether the trial court abused its discretion in sustaining Aguilar's objections to Ross's declaration and then consider whether the remaining evidence satisfied Midas's burden to prove the existence of an arbitration agreement.

A.    *Applicable Law and Standards of Review*

"When a party to a civil action asks the trial court to compel arbitration of the pending claim, the court must determine whether an 'agreement to arbitrate the controversy exists.'  [Citations.]  'Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence.'"  (*West v. Solar Mosaic LLC* (2024) 105 Cal.App.5th 985, 992; see Code Civ. Proc., § 1281.2; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413; *Jones v. Solgen Construction, LLC* (2024) 99 Cal.App.5th 1178, 1195.)

"The trial court determines whether an agreement to arbitrate exists 'using a three-step burden-shifting process.' [Citation.]  First, the party petitioning to compel arbitration must state 'the provisions of the written agreement and the paragraph that provides for arbitration.  The provisions must be stated verbatim or a copy must be physically or electronically attached to the petition and incorporated by reference.'  [Citations.] Signatures on the arbitration agreement need not be authenticated at this initial stage."  (*West v. Solar Mosaic LLC*, *supra*, 105 Cal.App.5th at p. 992; see *Iyere v. Wise Auto Group* (2023) 87 Cal.App.5th 747, 755.)  "If the petitioner meets their initial burden, the burden of production shifts to the party opposing the petition to compel arbitration, who must offer

10

admissible evidence creating a factual dispute as to the agreement's existence.  [Citation.]  When the dispute centers on the authenticity of signatures, '[t]he opponent need not *prove* that his or her purported signature is not authentic, but must submit sufficient evidence to create a factual dispute and shift the burden back to the arbitration proponent, who retains the ultimate burden of proving, by a preponderance of the evidence, the authenticity of the signature.'"  (*West*, at p. 992; accord, *Iyere*, at p. 755; see *Ramirez v. Golden Queen Mining Company, LLC* (2024) 102 Cal.App.5th 821, 829-830.)  "'[T]he trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence . . . to reach a final determination.'" (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 164; accord, *Ramirez*, at p. 829; see Code Civ. Proc., § 1290.2.)

"'Civil Code section 1633.9 addresses how a proponent of an electronic signature may authenticate the signature—that is, show the signature is, in fact, the signature of the person the proponent claims it is.  The statute states: "(a) An electronic record or electronic signature is attributable to a person if it was the act of the person.  The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable."'" (*Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1061 (*Espejo*), italics omitted; see *Ruiz*, *supra*, 232 Cal.App.4th at p. 843.)

A party may authenticate another party's use of a checkbox to assent to an arbitration agreement by showing the signatory used a unique, secure username and password to access the website or application containing the agreement.  (See *Garcia*

11

*v. Stoneledge Furniture LLC* (2024) 102 Cal.App.5th 41, 53-54; *Zamudio v. Aerotek, Inc.* (E.D.Cal. 2023) 698 F.Supp.3d 1202, 1206.) The party seeking to authenticate such an agreement must also show that only the purported signatory "could have placed the electronic signature on the arbitration agreement." (*Garcia*, at p. 53; see *Bannister v. Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541, 547 [employer's evidence did not establish the employee "was assigned a unique, private username and password such that she is the only person who could have accessed the onboarding portal and signed the agreement"].) Such a showing might include, for example, the security precautions regarding the use of the unique username and password. (*Garcia*, at p. 54; see *Espejo*, *supra*, 246 Cal.App.4th at p. 1062 [employer authenticated the employee's electronic signature by detailing the "security precautions regarding transmission and use of an applicant's unique user name and password, as well as the steps an applicant would have to take to place his or her name on the signature line of the employment agreement"]; *Zamudio*, at pp. 1206-1207 [authentication of electronic signatures turns "on the reliability demonstrated in the processes associated with use of the username and password"].) We review the trial court's evidentiary rulings on a motion to compel arbitration for abuse of discretion. (*Jones v. Solgen Construction, LLC*, *supra*, 99 Cal.App.5th at p. 1188; *Gamboa v. Northeast Community Clinic*, *supra*, 72 Cal.App.5th at pp. 168-169.)[2]

---

[2] Midas argues we should review de novo the trial court's rulings sustaining objections to Ross's declaration because that standard of review applies "to the question of whether [the] trial court has correctly construed an evidentiary statute." Midas,

"With respect to the ultimate question whether an agreement to arbitrate exists, [i]f the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citation.]  When, as here, the court's order denying a motion to compel arbitration is based on the court's finding that petitioner failed to carry its burden of proof, the question for the reviewing court is whether that finding is erroneous as a matter of law. [Citations.]  Specifically, the question becomes whether the appellant's evidence was (1) uncontradicted and unimpeached and (2) of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.  [Citation.]  [U]nless the trial court makes specific findings of fact in favor of the losing [party], we presume the trial court found the [party's] evidence lacks sufficient weight and credibility to carry the burden of proof.  [Citations.]  We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence.  [Citation.]  The appellate court cannot substitute its factual determinations for those of the trial court; it must view all factual matters most favorably to the prevailing party and in support of the judgment.  [Citation.]  All conflicts, therefore, must be resolved in favor of the respondent." (*West v. Solar Mosaic LLC, supra,* 105 Cal.App.5th at p. 993, internal quotation marks omitted; accord, *Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1121; *Gamboa v. Northeast Community Clinic, supra,* 72 Cal.App.5th at pp. 166-167; see *Jones v. Solgen Construction, LLC, supra,* 99 Cal.App.5th at p. 1198 ["To prevail, appellants must show that the trial court's

---

however, has not identified any statutory language the trial court interpreted or how the trial court erred in interpreting any such language.

13

conclusion that they failed to meet their burden of proof was erroneous as a matter of law."].)

B.     *The Trial Court Did Not Err in Denying Midas's Motion To Compel Arbitration*

The trial court impliedly found Midas satisfied its burden on the first step of the analysis by attaching a copy of the arbitration agreement purportedly bearing Aguilar's signature. It also impliedly found Aguilar met his burden on the second step to create a factual dispute regarding the agreement's authenticity and shifted the burden back to Midas.[3]  The court denied Midas's motion because Midas failed to meet its ultimate burden on the third step to show Aguilar's electronic signature was authentic.

---

[3]     Midas argues for the first time on appeal Aguilar did not meet his burden on the second step to create a factual dispute regarding the authenticity of his signature.  Midas (now) contends Aguilar, to create a factual dispute regarding the arbitration agreement's existence, had to say "more" than that he did not recall receiving, reviewing, or electronically signing it (such as, stating affirmatively he did not sign it).  Midas, however, forfeited this argument by not making it in the trial court.  (See *Dougherty v. U.S. Behavioral Health Plan* (2024) 101 Cal.App.5th 682, 688; *Cabatit v. Sunnova Energy Corp.* (2020) 60 Cal.App.5th 317, 322.)  In any event, in *Gamboa v. Northeast Community Clinic, supra*, 72 Cal.App.5th 158 this court held a party opposing a motion to compel arbitration can challenge the authenticity of an arbitration agreement at the second step by stating "the party never saw or does not remember seeing the agreement, or that the party never signed or does not remember signing the agreement."  (*Id.* at p. 165; but see *Ramirez v. Golden Queen Mining Company, LLC, supra*, 102 Cal.App.5th at p. 825 [rejecting *Gamboa* for handwritten signatures].)

14

That decision rested on the trial court's exclusion of much of Ross's declaration. As stated, we first address Midas's argument the court abused its discretion in excluding "substantial portions" of Ross's declaration, and then consider whether the remaining evidence compels a decision in Midas's favor.

### 1. *The Trial Court Did Not Abuse Its Discretion in Excluding Most of Ross's Declaration*

"[T]he testimony of a witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter." (Evid. Code, § 702, subd. (a).) "A witness' personal knowledge of a matter may be shown by any otherwise admissible evidence, including his own testimony." (*Id.*, subd. (b); see *Preciado v. Freightliner Custom Chassis Corp.* (2023) 87 Cal.App.5th 964, 974; *People ex rel. Owen v. Media One Direct, LLC* (2013) 213 Cal.App.4th 1480, 1484.) "'In order to have personal knowledge, a witness must have the capacity to perceive and recollect.' [Citation.] 'A witness challenged for lack of personal knowledge must nonetheless be allowed to testify if there is evidence from which a rational trier of fact could find that the witness accurately perceived and recollected the testimonial events.'" (*People v. Flinner* (2020) 10 Cal.5th 686, 741, italics omitted.)

Midas argues (without identifying any specific paragraphs or statements in Ross's declaration) Ross had personal knowledge of the onboarding process because (1) Ross was the owner of Midas; (2) Ross reviewed Midas's business records and "onboarding documents" to make his declaration; (3) Ross reviewed Aguilar's personnel file, "signed Agreement," and signed Employee Handbook Acknowledgement; and (4) Ross "walked the trial court, step-by-step, through the exact process of what

15

Aguilar had to do to electronically execute the Agreement." These facts may have shown Ross had personal knowledge of the general onboarding process for new Midas drivers, as he described it in paragraphs 5, 6, and 7 of his declaration. (See *Preciado v. Freightliner Custom Chassis Corp.*, *supra*, 87 Cal.App.5th at pp. 974-975 [declarant's review of records kept in the ordinary course of business, plus personal knowledge obtained during his employment, supported the court's finding he had personal knowledge of the matters stated in his declaration]; *Butte Fire Cases* (2018) 24 Cal.App.5th 1150, 1169 [trial court was entitled to accept assertions of personal knowledge made under penalty of perjury and based on the declarants' statements they had personal knowledge of their employer's operations and had reviewed relevant records used in the course of their employment].) Indeed, Aguilar did not object to these paragraphs.

But Midas did not show that Ross had personal knowledge of whether or how Aguilar used the onboarding system or that an act of Aguilar placed his purported signature (i.e., by clicking a box stating "I Agree and Accept") on the arbitration agreement. Most critically, Ross did not explain how he knew "[t]he name 'ALEJANDRO AGUILAR' could have only been placed by someone using [Aguilar's] unique username and password." Ross never stated at which step of the onboarding process a user "placed" his or her name anywhere. Instead, he said Midas "creates a profile for the employee using their name and e-mail address," which then prompts the onboarding system to send the individual an email "inviting" them to access the onboarding system. Thus, Aguilar may never have "placed" his name into the onboarding system. To the extent Ross's statement referred

16

to Aguilar's name as it appeared in exhibit 2, Ross did not explain how he knew the appearance of Aguilar's name in the document meant Aguilar signed the arbitration agreement.  Ross provided no information about how the online record shown in exhibit 2 was generated or even what system (the Amazon Flex app or something else) generated it.  Nor did he state any basis for how he would know and provide such information.  Thus, Ross's conclusion "the electronic signature could only have been made by [Aguilar]" was speculative, and the trial court properly excluded it.  (See *Trinity v. Life Ins. Co. of North America*, *supra*, 78 Cal.App.5th at p. 1125 [testimony about a deleted email from a witness with no personal knowledge of the company's document retention policies or backup procedures for deleted emails was speculative]; *Zamudio v. Aerotek, Inc.*, *supra*, 698 F.Supp.3d at p. 1209 [declaration that did not address why the declarant was "certain that it was Plaintiff that signed the documents" did not authenticate a purported electronic signature].)

Citing *Tutti Mangia Italian Grill, Inc. v. American Textile Maintenance Co.* (2011) 197 Cal.App.4th 733 (*Tutti Mangia*), Midas argues it was "self-evident" Ross had personal knowledge of the onboarding process described in his declaration.  But that case stands only for the proposition that, to satisfy the personal knowledge requirement, a declarant need not state expressly that the declaration is based on personal knowledge.  (See *id.* at p. 742.)  In other words, the court in *Tutti Mangia* held that, if the declarant's statements demonstrate he or she has personal knowledge, the declarant does not need to also state the magic words (or, in the *Tutti Mangia* court's words, "averment"), "I make this declaration on the basis of personal knowledge."

17

*Tutti Mangia* is also factually distinguishable. In that case the defendant submitted declarations from two employees explaining the circumstances in which the plaintiff's general manager purportedly signed an arbitration agreement. (*Tutti Mangia, supra,* 197 Cal.App.4th at pp. 736-737.) The declarations "described the events from their respective viewpoints," but did not explicitly state they were made on the basis of personal knowledge. (*Id.* at p. 737.) For example, one employee's declaration stated that the first thing he did after appearing at the plaintiff's office on a particular date "'was to inquire of [the general manager] as to when he was going to sign the contract.'" (*Id.* at p. 742.) The court held it was "self-evident that this statement was made on the basis of [the employee's] personal knowledge and not on the basis of 'information and belief.'" (*Ibid.*) In contrast, it is not self-evident that Ross's statement no one other than Aguilar could have signed the arbitration agreement is based on personal knowledge. As discussed, Ross's declaration is missing several critical steps connecting Aguilar's use of the onboarding system to exhibit 2, which Midas says shows Aguilar assented to the agreement. And nothing in Ross's declaration suggests he had the personal knowledge to connect those dots.

Midas argues a requirement that declarants possess "personal knowledge of the 'inner workings' of an onboarding system" would be "asinine." There are plenty of cases, however, where the declarant had sufficient knowledge of such systems to authenticate an electronic signature. (See, e.g., *Espejo, supra,* 246 Cal.App.4th at p. 1052 & fn. 1 [declaration by a systems consultant who maintained the online system used to secure the plaintiff's electronic signature]; *Zamudio v. Aerotek, Inc.*

18

(E.D.Cal. 2024) 733 F.3d 931, 940 [declaration by the manager of technology products including the onboarding program used by the plaintiff to sign an electronic arbitration agreement]; see also *LAOSD Asbestos Cases* (2023) 87 Cal.App.5th 939, 947 [Evidence Code does not exempt from the personal knowledge requirement a corporate representative who has conducted an investigation or reviewed relevant documents.]; *Zamudio v. Aerotek, Inc.*, *supra*, 698 F.Supp.3d at p. 1207 ["Some 'courts have found the declaration of [ ] human resource employees sufficient to authenticate electronic signatures' [citation], but it is the *content* of such declarations, rather than their mere existence, that is determinative for clearing the authentication threshold."].) That Midas was able to find cases where declarants with seemingly little specialized knowledge were able to authenticate an electronic signature does not demonstrate the trial court abused its discretion in excluding most of Ross's declaration for lack of personal knowledge. (See *Audish v. Macias* (2024) 102 Cal.App.5th 740, 747 [reviewing court will not reverse an evidentiary ruling "merely because reasonable people might disagree" (internal quotation marks omitted)]; *Jones v. Solgen Construction, LLC*, *supra*, 99 Cal.App.5th at p. 1189 [same].)

> 2. *The Admissible Evidence Does Not Compel a Finding Aguilar Agreed To Arbitrate His Claims*

As discussed, a party may show an electronic signature was the act of a particular person "by presenting evidence that a unique login and password known only to that person was required to affix the electronic signature, along with evidence detailing the procedures the person had to follow to electronically

19

sign the document and the accompanying security precautions." (*Bannister v. Marinidence Opco, LLC*, *supra*, 64 Cal.App.5th at p. 545; see *Espejo*, *supra*, 246 Cal.App.4th at p. 1062.) The admissible evidence from Ross's declaration included (1) general information about Aguilar's work history at Midas; (2) the unsigned form arbitration agreement, attached as exhibit 1; and (3) general information about how Midas invites prospective employees to begin the onboarding process. The trial court also admitted Cantwell-Badyna's declaration and its attached exhibit 1, which included the form arbitration agreement and the online record purportedly showing the date and time Aguilar assented to the arbitration agreement. Together, this evidence does not compel a finding Aguilar agreed to arbitrate his claims.

Cantwell-Badyna may have been the right person, but she said the wrong things. The general information in her declaration did not state whether a unique login and password known only to Aguilar were required to assent to the arbitration agreement, narrate the procedures Aguilar had to follow to electronically sign the agreement, or describe any accompanying security precautions. Neither Ross's declaration nor Cantwell-Badyna's declaration attached a copy of the email generated to invite Aguilar to complete the onboarding process (see *Trinity v. Life Ins. Co. of North America*, *supra*, 78 Cal.App.5th at p. 1119), identified records showing the email address Aguilar used to access the onboarding system, or explained the relationship between Aguilar's online credentials and the unique transporter identification shown on the record purporting to reflect the date and time Aguilar signed the arbitration agreement. (See *Garcia v. Stoneledge Furniture LLC*, *supra*, 102 Cal.App.5th at pp. 53, 54 [employer did not "meet the

20

authentication requirements" where the declarant did not identify an Internet Protocol (IP) address connecting the purported signatory with the online arbitration agreement or "detail the security precautions"];[4] *Ruiz, supra*, 232 Cal.App.4th at pp. 839-841 [statements that an employer presents "'all persons who seek or seek to maintain employment'" with the arbitration agreement and that "'[e]ach employee is required to log into the Company's HR system—each with his or her unique login ID and password—to review and electronically execute'" the arbitration agreement were insufficient to authenticate the signature as an act of the plaintiff]; cf. *Espejo, supra*, 246 Cal.App.4th at p. 1062 [declarant authenticated an electronic signature by describing the relevant security measures and providing the IP address where the documents were executed].)

A party may be able to authenticate an electronic signature without providing evidence of all of these indicia of authentication. (See *Zamudio v. Aerotek, Inc., supra*, 698 F.Supp.3d at pp. 1206-1207 [processes associated with the use of unique usernames and passwords "are fact-specific and contextual; they may take many forms yet still satisfy the burden of authentication"]; see also Civ. Code, § 1633.9, subd. (b) ["[t]he effect of an . . . electronic signature attributed to a person . . . is determined from the context and surrounding circumstances at the time of its creation"].) But Midas did not provide any of this information. The admissible evidence does not compel a finding

_____

[4] An IP address is a unique identifier that functions like a Social Security number or telephone number, each corresponding to a specific entity connected to the Internet. (*Kinda v. Carpenter* (2016) 247 Cal.App.4th 1268, 1273, fn. 3; see *Kleffman v. Vonage Holdings Corp.* (2010) 49 Cal.4th 334, 337.)

the trial court erred in denying Midas's motion to compel arbitration.

## DISPOSITION

The order is affirmed.  Aguilar is to recover his costs on appeal.


                                        SEGAL, J.

We concur:


        MARTINEZ, P. J.


        FEUER, J.