Filed 12/15/25  Turner v. Insight Global CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JON TURNER,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>INSIGHT GLOBAL, LLC,<br><br>  Defendant and Appellant. | G064160<br><br>(Super. Ct. No. 30-2023-01330331)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Theodore R. Howard, Judge. Affirmed.

Seyfarth Shaw, Geoffrey C. Westbrook and Emily Nahan for Defendant and Appellant.

Odell Law, Robert Odell; Rissell Law Firm, Melody Ruby Rissell; Gelb Law and Yisrael Gelb for Plaintiff and Respondent.

Defendant Insight Global, LLC (Insight Global) appeals after the trial court denied its motion to compel to arbitration the claims brought against it by former employee Jon Turner. As explained *post*, Insight Global met its initial burden of producing prima facie evidence the parties had entered into an agreement to arbitrate Turner's claims, thereby shifting the burden of producing evidence disputing its existence and/or enforceability to Turner. After Turner produced evidence disputing the parties had entered a valid arbitration agreement, including evidence raising a factual issue regarding the authenticity of his signature on the agreement, the burden of production shifted back to Insight Global to prove by a preponderance of the evidence the existence of a valid arbitration agreement. Insight Global failed to carry its burden of proof. We therefore affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I.

TURNER INITIATES THIS ACTION AGAINST INSIGHT GLOBAL

Turner was jointly hired by Insight Global and Peraton State & Local, Inc. (Peraton) to provide desktop support/information technology services to the City of Irvine. After Turner's employment with Insight Global and Peraton was terminated, Turner initiated this action against Insight Global, Peraton, and the City of Irvine. He asserted claims against Insight Global for violations of the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq); wrongful termination in violation of public policy; negligent hiring, retention, and supervision; unfair business practices (Bus. & Prof. Code, § 17200); waiting time penalties (Lab. Code, §§ 201–203); and failure to permit inspection of employee records (*id.*, § 226).

## II.

### INSIGHT GLOBAL MOVES TO COMPEL ARBITRATION

Insight Global filed a motion to compel arbitration under the Federal Arbitration Act (9 U.S.C. § 1 et seq.) (the FAA) and the California Arbitration Act (Code Civ. Proc., § 1280 et seq) (the motion to compel), based on its contention Turner entered a written agreement to submit employment-related disputes with Insight Global to binding arbitration.[1] In support of its motion to compel, Insight Global produced an unsigned copy of an agreement entitled "Contract Employee Agreement" (CEA) it asserted had been entered by Insight Global and Turner.

Paragraph 21 of the CEA included an arbitration provision which states in part: "[I]n the event of any dispute or claim arising out of or relating to [c]ontract [e]mployee's application for employment with Insight Global, [c]ontract [e]mployee's employment with Insight Global, the termination of [c]ontract [e]mployee's employment, or otherwise relating to this [a]greement . . . , [c]ontract [e]mployee and Insight Global agree that all such [d]isputes shall be fully, finally and exclusively resolved by confidential, binding, individual arbitration before the American Arbitration Association ('AAA'). Contract [e]mployee and Insight Global agree that a confidential arbitration, as contemplated by the [FAA] and related case law, is the sole and exclusive forum for resolution of any and all [d]isputes and hereby mutually waive their right to trial before a judge or jury in federal or state court in favor of arbitration under this [a]greement."

The motion to compel was supported by the declaration of Insight Global's Senior Associate General Counsel William H. Rooks. In his

---

[1] Peraton filed a notice of joinder in the motion to compel but did not appeal from the denial of that motion.

declaration, Rooks stated that "all new hires [of Insight Global] must review and execute the [CEA], which includes an arbitration agreement" as a condition of employment. He stated: "A new hire's employment with Insight Global officially begins only after [he] has signed and returned all required documents."

Rooks further stated in his declaration that, on April 30, 2021, at 4:07 p.m., as part of the onboarding process, Turner "accessed the CEA via Insight Global's onboarding platform with his personal email address and electronically signed the CEA." He stated Turner thereby "agreed to pursue all claims arising out of or relating to his employment through final and binding arbitration."

An unsigned copy of the CEA was identified in and attached to Rooks's declaration. Although Turner's signature did not appear in the copy of the CEA attached to his declaration, Rooks also stated, "[Turner]'s signature is authenticated by his [d]ocument [h]istory [l]og," a copy of which was also attached to Rooks's declaration.

Rooks added: "At no point during the onboarding process or during his employment with Insight Global did [Turner] refuse to enter the [a]rbitration [a]greement or seek clarification of its terms. At all relevant times, [Turner] had online access to his CEA via Insight Global's onboarding platform."

The motion was also supported by the declaration of Insight Global's attorney Michael Thomas. After determining that all of Turner's claims "entirely arise out of, relate to, and/or connect with his employment with Insight Global," and thus should have been submitted to binding arbitration, Thomas stated he asked Turner's counsel to meet and confer regarding the arbitration of such claims. Thomas stated he provided Turner's

4

counsel a copy of Turner's "executed [a]rbitration [a]greement" and requested that Turner stipulate to arbitrate his claims.

Thomas further stated in his declaration that after Turner "questioned the authenticity of his signature on the [a]rbitration [a]greement," meet and confer efforts "regarding the authenticity of [Turner's] signature" continued. Thomas also stated that although Insight Global "provided [Turner's] [d]ocument [h]istory [l]og authenticating [his] signature," Turner "refused to stipulate to arbitration despite the authentication of [Turner]'s signature." Insight Global thereafter filed the motion to compel.

III.

TURNER OPPOSES THE MOTION TO COMPEL

Turner filed an opposition to the motion to compel in which he argued: (1) Insight Global failed to produce a copy of an arbitration agreement signed by Turner or evidence Turner signed such an agreement; and (2) the arbitration provision contained in the CEA is unenforceable because it is both substantively and procedurally unconscionable. In support of the opposition, Turner filed his own declaration in which he stated in relevant part: "I was not aware that these onboarding agreements contained any arbitration agreements, and even if I were aware, I did not know what that meant or how this would impact my employment or afterwards. I do not recall seeing, reviewing, signing or agreeing to any arbitration agreement during my onboarding process with Insight Global or at any time thereafter."

Turner also filed evidentiary objections to portions of Rooks's declaration.

5

## IV.
### INSIGHT GLOBAL FILES A NOTICE OF ERRATA, A REPLY, AND EVIDENTIARY OBJECTIONS TO TURNER'S DECLARATION

The day after Turner filed his opposition, Insight Global filed a notice of errata stating it had inadvertently attached an unsigned version of the CEA to the motion to compel. Attached to the notice of errata was what Insight Global asserted was a "true and correct copy of the CEA signed by [Turner]." The notice of errata further stated that months earlier, Insight Global had e-mailed to Turner's counsel a copy of that signed agreement. The notice of errata concluded with the statement: "In light of the need to file a notice of errata, [Insight Global] is agreeable to continuing the hearing date to allow [Turner] time for supplemental briefing regarding the signature on the CEA."

Insight Global later filed a reply brief in support of the motion to compel as well as evidentiary objections challenging portions of Turner's declaration.

## V.
### THE TRIAL COURT DENIES THE MOTION TO COMPEL

The trial court denied the motion to compel and Peraton's corresponding joinder in that motion. The court sustained Turner's objection to a particular paragraph in Rooks's declaration on the ground it lacked foundation. The court otherwise overruled Turner's and Insight Global's respective objections. In denying the motion to compel, the court concluded Insight Global had failed to meet its burden of establishing the parties had entered a valid arbitration agreement. Consequently, the court did not reach Turner's arguments the proffered arbitration provision in the CEA was also unconscionable.

6

Insight Global filed a motion for reconsideration of the trial court's order denying the motion to compel. The court found the motion for reconsideration did not meet the requirements of section 1008, subdivision (a) of the Code of Civil Procedure and denied that motion.

Insight Global filed a notice of appeal in which it stated it was appealing from both the order denying the motion to compel and the order denying its motion for reconsideration. In its appellate briefs, however, Insight Global only challenges the denial of the motion to compel and does not provide legal analysis challenging the trial court's determination the motion for reconsideration failed to meet the requirements of section 1008, subdivision (a) of the Code of Civil Procedure. As Insight Global has abandoned its challenge to the order denying the motion for reconsideration, we do not address it further.

DISCUSSION

I.

GOVERNING LEGAL PRINCIPLES AND STANDARD OF REVIEW

"'Both the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) and the FAA . . . recognize ""arbitration as a speedy and relatively inexpensive means of dispute resolution"' . . . intended "'to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing.'" [Citation.]" [Citations.] The fundamental policy underlying both acts "is to ensure that arbitration agreements will be enforced in accordance with their terms." [Citations.] [¶] Arbitration is therefore a matter of contract.'" (*Franco v. Greystone Ridge Condominium* (2019) 39 Cal.App.5th 221, 226–227, italics omitted.) While "[p]ublic policy favors contractual arbitration as a means of resolving disputes," it is also true ""a party cannot be compelled to arbitrate a dispute

7

that he [or she] has not agreed to resolve by arbitration.”’”” (*Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1057.)

“On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists.” (Code Civ. Proc., § 1281.2.) The trial court is to employ a summary process in determining whether the parties had agreed to arbitrate their dispute (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 164 (*Gamboa*)), ““‘in which . . . ‘the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court’s discretion, to reach a final determination’”’” (*Doe v. Second Street Corp.* (2024) 105 Cal.App.5th 552, 564). While “the burden of persuasion is always on the moving party to prove the existence of an arbitration agreement with the opposing party by a preponderance of the evidence,” the burden of production, however, may shift in a three-step process. (*Gamboa, supra*, at pp. 164–165.)

“First, the moving party bears the burden of producing ‘prima facie evidence of a written agreement to arbitrate the controversy.’ [Citation.] . . . If the moving party meets its initial prima facie burden and the opposing party does not dispute the existence of the arbitration agreement, then nothing more is required for the moving party to meet its burden of persuasion.” (*Gamboa, supra*, 72 Cal.App.5th at p. 165.)

If the party moving to compel arbitration meets its initial prima facie burden, and the opposing party disputes the existence of an agreement

8

to arbitrate the controversy, then in the second step, the burden shifts to the opposing party to "'identify a factual dispute as to the agreement's existence' and . . . present admissible evidence to support the existence of that factual dispute." (*Ramirez v. Golden Queen Mining Co., LLC* (2024) 102 Cal.App.5th 821, 832, citing *Iyere v. Wise Auto Group* (2023) 87 Cal.App.5th 747, 755 (*Iyere*).) "If the opposing party meets its burden of producing evidence, then in the third step, the moving party must establish with admissible evidence a valid arbitration agreement between the parties." (*Gamboa, supra*, 72 Cal.App.5th at pp. 165–166.)

"""There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed.""" (*Franco v. Greystone Ridge Condominium, supra*, 39 Cal.App.5th at p. 227.)

## II.

### INSIGHT GLOBAL MET ITS INITIAL BURDEN OF PRODUCING EVIDENCE OF THE PARTIES' AGREEMENT TO ARBITRATE TURNER'S CLAIMS

In moving to compel arbitration, Insight Global met its initial burden of production under the *Gamboa* burden-shifting framework by producing a copy of the CEA it asserts Turner signed, which contains an arbitration provision that covers Turner's claims. At this stage of the analysis, it is of no moment Insight Global did not attach to its moving papers a *signed* copy of the CEA or authenticate Turner's signature on such an agreement.

Pursuant to rule 3.1330 of the California Rules of Court, a party moving to compel arbitration can meet its initial burden by either stating

9

"verbatim" the provisions of the purported arbitration agreement *or* by attaching a copy of the arbitration agreement to the petition and incorporating it by reference. (See *Brockman v. Kaiser Foundation Hospitals* (2025) 114 Cal.App.5th 569, 586 ["'At this step, a movant need not "follow the normal procedures of document authentication" and need only "allege the existence of an agreement and support the allegation as provided in rule [3.1330]"'"]; see also *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 218–219 [a petitioner seeking to compel arbitration is not required to authenticate an opposing party's signature on an arbitration agreement to satisfy its initial burden].)

As Insight Global attached to the motion to compel a copy of the CEA, albeit unsigned, which Insight Global asserts was signed by Turner at the commencement of his employment, Insight Global met its initial burden and the burden of producing evidence shifted to Turner, accordingly.

III.

TURNER MET HIS BURDEN OF SHOWING A FACTUAL DISPUTE REGARDING WHETHER HE SIGNED ANY ARBITRATION AGREEMENT, INCLUDING THE ARBITRATION PROVISION CONTAINED IN THE CEA

Once Insight Global met its initial burden, the burden of production shifted to Turner "to identify a factual dispute as to the agreement's existence." (*Iyere, supra*, 87 Cal.App.5th at p. 755.) In his declaration opposing the motion to compel, Turner declared he "d[id] not recall seeing, reviewing, signing or agreeing to any arbitration agreement during [his] onboarding process with Insight Global or at any time thereafter."

Insight Global argues Turner's statement he did not recall signing any arbitration agreement was insufficient to carry his burden of

10

production in light of Insight Global's position Turner had signed the CEA, which contained an arbitration provision. Insight Global further argues Turner failed to respond to its "prima facie evidence" of Turner's purported "unique, cursive" electronic signature on the CEA. But as discussed *ante*, Insight Global did not produce a copy of the CEA bearing a purported signature of Turner in its moving papers. Instead, *after* Turner filed his opposition, Insight Global, without citations to legal authority supporting the propriety of its action, first produced a copy of the CEA purportedly signed by Turner by attaching it to a notice of errata.

In any event, assuming the signed copy of the CEA was properly before the trial court in its consideration of the motion to compel, Turner's burden with respect to his purported signature was to offer admissible evidence that created a factual dispute as to its authenticity. (See *Ramirez v. Golden Queen Mining Co., LLC, supra*, 102 Cal.App.5th at p. 833.) He did not have the burden of proving his purported signature was not authentic. (*Ibid.*) Instead, he had to "submit sufficient evidence to create a factual dispute and shift the burden back to [Insight Global], who retain[ed] the ultimate burden of proving, by a preponderance of the evidence, the authenticity of the signature." (*Id.* at pp. 833–834.)

We agree with the trial court Turner's statement he did not recall seeing, reviewing, signing, or agreeing to *any* arbitration agreement was sufficient to create a factual issue disputing the authenticity of his purported electronic signature on the CEA containing the arbitration provision. (See *Iyere, supra*, 87 Cal.App.5th at p. 757 ["the individual's inability to recall signing electronically may reasonably be regarded as evidence that the person did not do so"]; *Gamboa, supra*, 72 Cal.App.5th at p. 167 [the plaintiff "met her burden on the second step by filing an opposing declaration, saying

11

she did not recall the agreement and would not have signed it if she had been aware of it"]; *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 846 ["In the face of [the plaintiff's] failure to recall signing the [arbitration] agreement, [the defendant] had the burden of proving by a preponderance of the evidence that the electronic signature was authentic"].)

In its opening brief, Insight Global argues Turner's statement is insufficient because he does not address whether he recalled seeing, reviewing, signing, or agreeing to the CEA (which contains the arbitration provision Insight Global seeks to enforce), as opposed to "any arbitration agreement." In moving to compel arbitration, however, Insight Global itself provided clarity on the subject by itself introducing evidence that Turner had disputed the authenticity of his signature on the CEA. Specifically, in Thomas's declaration filed in support of the motion to compel, Thomas stated that, before filing the motion, he provided Turner's counsel a copy of Turner's executed agreement and requested that the parties stipulate to arbitrate Turner's claims. Insight Global's notice of errata confirms that the same signed copy of the CEA attached thereto (with Turner's purported "unique, cursive" electronic signature) was the version provided to Turner's counsel in those meet and confer communications regarding arbitration. In his declaration, Thomas further specifically stated Turner "questioned the authenticity of his signature on the [a]rbitration [a]greement," which caused meet and confer efforts "regarding the authenticity of [Turner's] signature" to continue.

In light of the foregoing, the record supports the existence of a factual dispute regarding the authenticity of Turner's signature on the CEA, drawing into question whether he had agreed to the arbitration provision it contained.

## IV.

### THE TRIAL COURT DID NOT ERR BY CONCLUDING INSIGHT GLOBAL FAILED TO PROVE TURNER SIGNED THE CEA AND THUS FAILED TO SHOW THE PARTIES ENTERED INTO A VALID ARBITRATION AGREEMENT

"If the opposing party meets its burden of producing evidence, then in the third step, the moving party must establish with admissible evidence a valid arbitration agreement between the parties." (*Gamboa, supra*, 72 Cal.App.5th at p. 165.) In denying the motion to compel, the trial court concluded Insight Global failed to meet its burden of proving, with admissible evidence, the signature on the CEA was Turner's or that Turner had otherwise entered a valid arbitration agreement with Insight Global.

""When, as here, the court's order denying a motion to compel arbitration is based on the court's finding that [the moving party] failed to carry its burden of proof [with respect to the ultimate question of whether an agreement to arbitrate exists], the question for the reviewing court is whether that finding is erroneous as a matter of law. [Citations.] "Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.""" [Citation.] ""[U]nless the trial court makes specific findings of fact in favor of the losing [party], we presume the trial court found the [party's] evidence lacks sufficient weight and credibility to carry the burden of proof. [Citations.] We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence."" [Citation.] 'The appellate court cannot substitute its factual determinations for those of the trial court; it must view all factual matters most favorably to the prevailing party and in support of the judgment."" (*Brockman v. Kaiser Foundation Hospitals, supra*, 114 Cal.App.5th at pp. 587–588.)

13

In its minute order denying the motion to compel, the trial court concluded Rooks's declaration, which was offered by Insight Global to authenticate Turner's signature on the CEA, failed to do so. The court pointed out several deficiencies in Rooks's attempt at such authentication, including that Rooks did not explain: (1) how Turner's purported printed electronic signature or the date printed below that purported signature came to be placed on the CEA; (2) how the date printed next to the electronic signature indicated the date the electronic signature was made; (3) how Rooks knew Turner's personal e-mail address and that Turner accessed the CEA using his personal e-mail address; (4) that only a person using Turner's personal e-mail address could have placed an electronic signature in his name on the CEA; (5) how he concluded Turner was the person who electronically signed the CEA; (6) that all Insight Global employees were required to use their personal e-mail addresses when they accessed Insight Global's onboarding platform to sign electronic forms and agreements; or (7) how the document history log produced by Insight Global worked to authenticate Turner's signature on the CEA.

In light of the foregoing, the trial court sustained Turner's objection to paragraph 8 of Rooks's declaration as lacking foundation. Paragraph 8 of that declaration stated: "As part of his onboarding, on April 30, 2021, at 4:07 p.m., [Turner] accessed the CEA via Insight Global's onboarding platform with his personal email address and electronically signed the CEA. [Turner] agreed to pursue all claims arising out of or relating to his employment through final and binding arbitration. A true and correct copy of the CEA is attached as [e]xhibit A. [Turner]'s signature is authenticated by his [d]ocument [h]istory [l]og, a true and correct copy of which is attached as [e]xhibit B." The trial court did not abuse its discretion

14

in sustaining Turner's objection to paragraph 8 of Rooks declaration. (*Geragos v. Abelyan* (2023) 88 Cal.App.5th 1005, 1021 [we review the trial court's evidentiary rulings for abuse of discretion].)

In light of the dearth of admissible evidence authenticating Turner's signature on the CEA, or showing he otherwise agreed to arbitrate his claims, the trial court did not err by concluding Insight Global failed to meet its burden of establishing it had entered into a valid arbitration agreement with Turner.

## DISPOSITION

The order is affirmed. Respondent to recover costs on appeal.


                                            MOTOIKE, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


GOODING, J.

15